UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
HENRY H. BRECHER, Individually And On
Behalf Of All Others Similarly Situated,

                     Plaintiff,

v.

REPUBLIC OF ARGENTINA,

                     Defendant.
-----------------------------------------------------------x

No. 06-CV-15297

CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, upon knowledge as to his own acts and upon information and belief as to all other matters, for his Class Action Complaint ("Complaint") against the Republic of Argentina ("Republic" or "Argentina"), alleges as follows:

## I. NATURE OF THE CASE

1. This is a class action brought on behalf of a class (the "Class") of all persons who from the date of class certification until final judgment in the District Court continuously hold bonds issued by Argentina with ISIN XS0113833510, a coupon rate of 9.25 %, and a maturity date of July 20, 2004 ("Bonds").

2. In this bond offering, Argentina promised in clear, unequivocal language that it would pay principal and interest when due on the Bonds.

3. Thousands of investors purchased the Bonds expecting to receive interest payments and payment on principal when due.

4. On or about December 23, 2001, Argentina declared a moratorium on the payment of all principal and interest with respect to its foreign debt, including but not limited to all payments due under the Bonds, and went into default.

5. Since then, Argentina has made no payments of principal or interest to any owners of beneficial interests in the Bonds, and Argentina has continuously refused to make any such payments.

6. Even after deducting Bonds surrendered to Argentina in a 2005 exchange offer, approximately 453,059,000 Euros of the Bonds are still outstanding.

7. Both the moratorium and the failure to pay interest when due constitute events of default under the terms of the prospectus, Trust Deed dated July 27, 1993 ("Trust Deed"), the Fifteenth Supplemental Trust Deed dated Dec. 20, 2001 ("Suppl. Trust Deed"), and other contract documents issued in connection with the Bonds.

8. By reason of the foregoing, Plaintiff, on behalf of himself and all other owners of beneficial interests similarly situated, asserts claims against the Republic as set forth below.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330 and 1367.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f) and pursuant to certain of the agreements forming the Bond documents. Personal jurisdiction over the Republic is conferred pursuant to the Bond documents. Furthermore, the Republic satisfies the minimum contacts test for jurisdiction under the Due Process Clause of the Fifth Amendment because bonds denominated in various currencies are traded in New York and "Argentina 'purposefully avail[ed] itself of the privilege of conducting activities within the [United States].'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992).

11. The Republic has appointed Banco de la Nación Argentina, now at 225 Park Avenue, New York, NY 10169, as its agent for service of process (Trust Deed § 17.3; Suppl. Trust Deed, at 22 (§ 17.3); Suppl. Trust Deed, at 56 (§ 19(c)), and the Republic has expressly

agreed to waive any claim of immunity, including, but not limited to, sovereign immunity (Trust Deed § 17.4; Suppl. Trust Deed, at 22-23 (§ 17.4); Suppl. Trust Deed, at 56 (§ 19(d))).

12. The Bonds are part of the Euro Medium Term Note Programme governed by the Trust Deed and the Suppl. Trust Deed which expressly provide for jurisdiction in New York and the application of English law. Trust Deed §§ 17.1, 17.2; Suppl. Trust Deed, at 2 (§ 17.2); Suppl. Trust Deed at 55-56 (§ 19).

### III. THE PARTIES

13. Plaintiff Henry H. Brecher owns Bonds issued by the Republic of Argentina on which the Republic of Argentina has failed to pay interest and principal, and has been damaged thereby.

14. Defendant Republic of Argentina is a foreign state as defined in 28 U.S.C. § 1603(a).

### IV. CLASS ACTION ALLEGATIONS

15. This action is brought as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Class is defined as follows:

> All persons who from the date of class certification in this action until the date of final judgment in the District Court continuously hold beneficial interests in Bonds issued by the Republic of Argentina with ISIN XS0113833510.

16. This action is properly brought as a class action for the following reasons:

   a. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at the present time, Plaintiff believes that the Class consists of thousands of investors. As of December 23, 2001, the Republic had issued approximately $88 billions of debt, including the Bonds. Approximately 453,059,000 Euros of the Bonds are still outstanding, representing thousands upon thousands of investors.

b.  Plaintiff's claims are typical of the claims of all members of the class because he and all of the Class members sustained damages that arise out of the Republic's default under the Bond agreements.

c.  Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff has no interests antagonistic to those of the Class. Plaintiff seeks to recover on behalf of himself and all Class members. Members of the Class may be identified from records maintained by the Republic and the relevant clearing systems, and brokerage firms and transfer agents and may be notified of the pendency of this action by mail and through the media, if required.

d.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, because joinder of all members of the Class is impracticable. Plaintiff knows of no difficulty in the management of this action that would preclude its maintenance as a class action.

e.  Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, because the actions of the Republic were generally applicable to and similarly affected the members of the Class. Among the questions of fact and law involved herein that are common to the Class are:

(1) Whether the declaration by the Republic, on or about December 23, 2001, constituted an "event of default" within the meaning of the Bond agreements;

(2) Whether the members of the Class sustained damages and, if so, the appropriate measure thereof.

(3) Whether Argentina made the same default as regards all other Bonds when it defaulted on Plaintiff's Bonds, per Trust Deed § 10.2;

(4) Whether Argentina is liable under breach of contract for its default;

(5)     Whether Argentina stopped making payments on interest and principal for the Bonds;

(6)     Whether Argentina has a viable affirmative defense to its breach of contract.

## V.     STATEMENT OF FACTS

17.     In the early 1990s, Argentina captured the attention of international investors by pegging its peso to the dollar in order to capture chronic inflation. That move, part of a larger economic program that included privatizing state-owned industries, helped revive the country's economy. For a while, the Argentine economy grew even faster than China's and foreign capital poured into the country.

18.     But around 1998, as Argentina's efforts to control spending failed and economic growth began to slow, the Argentine government and investment bankers sought out retail investors to meet the Republic's financing needs.

19.     Those retail investors included hundreds of thousands of small investors concentrated in the United States, Italy, Switzerland and Germany. In marketing these bonds, Argentina capitalized on a preference of such investors for fixed income investments over stock. Roughly 9% of bonds issued by Argentina are held by U.S. citizens, 15% by Italian citizens, 10% by Swiss citizens and 5% by German citizens.

20.     The Republic issued over 1 billion Euros of Bonds to Plaintiff and members of the proposed class. As of December 31, 2001, roughly 1,041,560,000 Euros of Bonds were outstanding and unpaid.

21.     Plaintiff purchased 4,000 nominal Euros of Bonds at a cost of 14,318.78 Euros on November 23, 2000. On February 6, 2001, Plaintiff purchased additional 40,828.66 Euros of Bonds.

22.     Each of the Bonds contains the following promise:

> The Bonds will bear interest ... and will mature at par on ....
> Interest on the Bonds will be payable semi-annually, in equal
> installments ... each year, commencing ....

23. The Bonds contain the promise repeated throughout that principal and interest on the Bonds are payable by Argentina: "The Republic, for value received, hereby promises to pay to the bearer of this Note, on presentation and (when no further payment is due in respect of this Note) surrender of this Note on the Maturity Date stated above (or on such earlier date as the amount payable on redemption under the Conditions may become repayable in accordance with the Conditions) the amount payable upon redemption...." Suppl. Trust Deed, at 34.

24. In the Prospectus, Argentina promised to make payments on the Bonds.

25. In Suppl. Trust Deed, at 47-51 (§ 7), Argentina promised to make payments of principal and interest.

26. In the "Form of Coupon" for each note, Argentina promised to make payments of principal and interest. Suppl. Trust Deed, at 61-62.

27. In Trust Deed § 2.2, Argentina entered a "Covenant to Pay" the owners of beneficial interests in the Bonds. In the Suppl. Trust Deed, at 9-10 (§ 2.2), just a few days before its massive default, Argentina once again reaffirmed its "Covenant to Pay" the owners of beneficial interests in these Bonds.

28. The Republic appointed a "duly authorized person" to manually sign each note owned by Plaintiff and other class members. Trust Deed § 3.2; Suppl. Trust Deed, at 11 (§ 3.2).

29. The Bond prospectus defines an event of default to include "Non Payment" or a "moratorium" on the payment of the principal or of interest.

30. The Trust Deed states that the Trustee may not "waive or authorize" Argentina's breach if the bondholders would "be materially prejudiced thereby." Trust Deed, § 10.1; Suppl. Trust Deed, at 18 (§ 10.1).

31. The Trust Deed states that a breach that affects one bondholder, such as Plaintiff, automatically affects all other Class members: "If it is proved that as regards any specified Note or Coupon the Republic has made default in paying any sum due to the relevant Noteholder such proof will (unless the contrary be proved) be sufficient evidence that it has made the same default as regards all other Notes or Coupons which are then payable." Trust Deed, § 10.2.

32. On December 23, 2001, in breach of its promise to pay principal and interest, Argentina declared a default.

33. On February 20, 2002, Plaintiff received "Subscription Advice" informing him of the "Argentinien in Default" on his 38,000 Euros of Bonds and his 14,000 Euros of Bonds. Plaintiff has collected nothing from Argentina since then for the Bonds.

34. Argentina has refused to pay and tried to force bondholders to take a paltry settlement offer in 2005. Approximately 588,461,000 Euros of the Bonds were surrendered to Argentina in the settlement offer, leaving roughly 453,059,000 Euros of Bonds outstanding and unpaid, including those belonging to Plaintiff.

35. Hundreds or thousands of owners of beneficial interests have presented claims for payment on the Bonds. The Trustee has failed to proceed with litigation against Argentina or to otherwise take any significant action to collect the amounts due to owners of beneficial interests in the Bonds. The Trustee has failed to take action within a reasonable time and such failure is continuing.

36. On January 24, 2006, the Trustee acting through its Delegate, Wells Fargo, issued a Notice to Noteholders ("Notice") regarding many bonds, including those Bonds owned by Plaintiff. Plaintiff did not receive a copy of the Notice. The Notice improperly demanded prior payment from bondholders as a precondition to taking action against Argentina on their behalf. Moreover, the Notice discouraged bondholders from taking legal action against Argentina, predicting that such action "would be costly and lengthy and with no certainty that the Republic will pay any funds as a result." Notice, at 2.

37. The Trustee's own material conflict of interest has prevented, and does prevent, it from taking any meaningful action against Argentina on behalf of bondholders. The Trustee currently earns millions or billions of dollars from Argentina by servicing contracts and, therefore, the Trustee has a strong disincentive to proceed on behalf of bondholders.

38. Plaintiff and thousands of owners of beneficial interests still own the Bonds and have been injured by Argentina's default. Specifically, Plaintiff and Class members own at least 453,059,000 Euros of Bonds.

39. On January 17, 2005, Plaintiff's bank informed him that they were holding 52,000 Euros of the Bonds for him in a custody account. Plaintiff still owns beneficial interests in these Bonds.

## VI. BREACH OF CONTRACT

40. Pursuant to various Prospectuses, the Trust Deed, Suppl. Trust Deed, and other documents setting forth the terms and conditions of various bonds (collectively, the "Bond Documents"), the Republic issued over a billion Euros of Bonds to members of the Class.

41. Each of the Bonds was issued pursuant to various agreements, including the Trust Deed. Pursuant to the Trust Deed of each of the Bonds forming the basis for this action, the failure to pay principal and/or interest when due and payable constitutes an Event of Default, as does the declaration of a moratorium on the payment of principal or interest by the Republic of Argentina.

42. On or about December 23, 2001, the Republic declared a moratorium on the payment of principal and interest with respect to all of its foreign debt. Following that declaration, the Republic has failed to make any payment of principal or interest to any bondholders.

43. On or about April 25, 2002, the Republic issued a resolution officially postponing payment of debt to investors.

44. By reason of the foregoing, there have been events of default as defined by the Bond Documents.

45. By reason of the foregoing, the Republic has breached its contractual obligations to Plaintiff and the Class, and the Republic is liable to Plaintiff and the Class for damages, including payment of principal and interest, in an amount to be determined by the trier of fact.

## VII. CONCLUSION

WHEREFORE, Plaintiff demands judgment as follows:

A. An order certifying the Class as set forth herein and designating plaintiff as the Class representative and his counsel as Class counsel;

B. A judgment awarding Plaintiff and other members of the Class compensation for the damages that they have sustained as a result of the breaches of the Bond Documents;

C. A judgment awarding Plaintiff's reasonable attorneys' fees, experts' fees, interest and cost of suit; and

D. Such other and further relief as this Court may deem just.

DATED: December 19, 2006.
New York, New York

MEREDITH COHEN GREENFOGEL &
SKIRNICK, P.C.

By /s/ Robert A. Skirnick
Robert A. Skirnick (RS 2636)
One Liberty Plaza, 35th Floor
New York, NY 10006
Telephone: (212) 240-0020

– and –

HAGENS BERMAN LLP
Steve W. Berman
Robert Gaudet, Jr.
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292