UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY H. BRECHER, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | 06 Civ. 15297 (TPG) |

**MEMORANDUM OF LAW OF DEFENDANT THE REPUBLIC OF ARGENTINA IN OPPOSITION TO CLASS CERTIFICATION**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore
Rahul Mukhi

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| PRELIMINARY STATEMENT | 1 |
| FACTUAL BACKGROUND | 3 |
| A. Mr. Brecher Seeks To Represent A Class of EMTN Bondholders | 3 |
| B. The Vast Majority Of EMTN Bondholders Have Rejected The Class Action Mechanism | 4 |
| C. The Trust Deed Governing The EMTN Bonds Provides The Sole Mechanism For Asserting Claims Against The Republic | 7 |
| ARGUMENT | 9 |
| I. THE PROPOSED CLASS FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(A) | 10 |
| A. There Is Insufficient Numerosity | 10 |
| B. Mr. Brecher Fails To Satisfy The Adequacy Requirements of Rule 23(a) | 15 |
| II. THE PROPOSED CLASS ACTION FAILS TO SATISFY THE SUPERIORITY OR PREDOMINANCE REQUIREMENTS OF RULE 23(B)(3) | 17 |
| A. The Proposed Class Action Fails Under The Superiority Requirement of Rule 23(b)(3) | 17 |
| i. Mr. Brecher May Not Supplant The Enforcement Mechanism Contemplated By The Trust Deed With A Rule 23 Class Action | 18 |
| ii. Even If Mr. Brecher Were Entitled To Ignore The Terms Of The Trust Deed – Which He Is Not – The Proposed Class Action Would Not Provide A Superior Methods Of Adjudication | 21 |
| B. The Proposed Class Action Fails Under The Predominance Requirement )f Rule 23(b)(3) | 24 |

**Page**

CONCLUSION........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Beck v. Status Game Corp., No. 89 Civ. 2923 (DNE), 1995 WL 422067 (S.D.N.Y. July 14, 1995)................. 15

Berlev v. Dreyfus & Co., 43 F.R.D. 397 (S.D.N.Y. 1967) ........................................................................... 12

Brown v. Blue Cross & Blue Shield of Mich. Inc., 167 F.R.D. 40 (E.D. Mich. 1996) ........................................................................... 23

Concord Trust v. The Law Debenture Trust Corp plc, [2005] 1 W.L.R. 1591, 1598 (House of Lords, Apr. 28, 2005) ............................ 19

Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig., 250 F.R.D. 137 (S.D.N.Y. 2008) ........................................................................... 10

Demarco v. Edens, 390 F.2d 836 (2d Cir. 1968)........................................................................... 10, 13

Edge v. C. Tech Collections, Inc., 203 F.R.D. 85 (E.D.N.Y. 2001)........................................................................... 11

Green v. Borg-Warner Protective Servs.Corp., No. 95 Civ. 10419 (RPP), 1998 WL 17719 (S.D.N.Y. Jan. 16, 1998).................. 14

In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24 (2d Cir.) ........................................................................... 1, 9, 13

In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................... 16

In re Nassau County Strip Search Cases, 461 F.3d 219 (2d Cir. 2006)........................................................................... 24

In re Stucco Litig., 175 F.R.D. 210 (E.D.N.C. 1997) ........................................................................... 21

Ingenito v. Bermec Corp., 376 F. Supp. 1154 (S.D.N.Y. 1974)........................................................................... 21

Investors Comp. Scheme Ltd. v. W. Bromwich Bldg. Soc., [1998] 1 W.L.R. 896, 904 (House of Lords, June 19, 1997)........................................................................... 19

**Page(s)**

Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus., 172 F. Supp. 2d 389 (S.D.N.Y. 2001) .......... 10-11

Kapiti v. Kelly, No. 07 Civ. 3782 (RMB), 2008 WL 3874310 (S.D.N.Y. Aug. 18, 2008) .......... passim

McLaughlin v. American Tobacco Co., 522 F.3d 215 (2d Cir. 2008) .......... 24-25

Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048 (TPG), 2005 WL 2656126 (S.D.N.Y. Oct. 17, 2005) .......... 6

Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66 (E.D.N.Y. 2000) .......... 12

Reese v. Arrow Fin. Servs., LLC, 202 F.R.D. 83 (D. Conn. 2001) .......... 14

Robertson v. Monsanto Co., 287 Fed. App'x 354 (5th Cir. 2008) .......... 22

Ruggles v. Wellpoint, Inc., No. 1: 08 Civ. 201(LEK), 2008 WL 4346812 (N.D.N.Y. Sept 24, 2008) .......... 10

Spann v. AOL Time Warner, Inc., 219 F.R.D. 307 (S.D.N.Y. 2003) .......... 25

Steinmetz v. Bache & Co., 71 F.R.D. 202 (S.D.N.Y. 1976) .......... 21-22

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196 (2d Cir. 2008) .......... passim

William Goldman Theatres, Inc. v. Paramount Film Distrib. Co., 49 F.R.D. 35 (E.D. Penn. 1969) .......... 20

Windham v. Am. Brands, Inc., 565 F.2d 59 (4th Cir. 1977) .......... 25

Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030 (5th Cir. 1981) .......... 11-12

**Other Authorities**

Fed. R. Civ. P. 23 .......... passim

**Page(s)**

Liz Dixon & David Wall, Bank of England, Collective Action Problems and Collective Action Clauses, Financial Stability Review, June 2000. .................................................... 19

Defendant the Republic of Argentina (the "Republic") submits this Memorandum of Law in opposition to plaintiff's motion for class certification.[1]

## PRELIMINARY STATEMENT

As the Second Circuit recently reconfirmed, a party seeking class certification bears the burden of demonstrating by preponderance of the evidence that *each* of the requirements under Rule 23 has been satisfied. See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201 (2d Cir. 2008); see also Kapiti v. Kelly, No. 07 Civ. 3782 (RMB), 2008 WL 3874310, at *2 (S.D.N.Y. Aug. 18, 2008) (citations omitted) ("A court must conduct a 'rigorous analysis' to determine if those requirements are met, resolving any factual disputes relevant to the Rule 23 analysis."). Far from satisfying this burden, Mr. Brecher has proffered *no* evidence to support a finding that the Rule 23 factors have been satisfied here. In fact, the undisputed facts demonstrate that he has *not* met the numerosity or adequacy requirements of Fed. R. Civ. P. 23(a), or the superiority or predominance requirements of Fed R. Civ. P. 23(b)(3). Accordingly, his motion for class certification should be denied. See In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir.), reh'g denied, 483 F.3d 70 (2006) (it is "beyond dispute that a district court may not grant class certification without making a determination that all of the Rule 23 requirements are met.").

The undisputed facts demonstrate that the vast majority, if not all, of the bondholders that Mr. Brecher seeks to represent have already *rejected* the class action mechanism in favor of another route – holders of approximately 62% of the originally issued principal amount of the series of bonds covered by the definition of the proposed class were

1 Unless otherwise noted, exhibits are attached to the declaration of Rahul Mukhi, dated December 19, 2008 ("Mukhi Decl."). The transcript of the October 13, 2008 deposition of Mr. Brecher is referred to as the "Brecher Depo. Tr." and the relevant excerpts are attached as Ex. A to the Mukhi Declaration.

either tendered in the Republic's 2005 exchange offer or have pursued an individual action in this Court, and over ***16,000*** holders of the remaining 38% have expressly opted out of the proposed class. And even if there were any remaining EMTN bondholders that have not already "voted with their feet" against the proposed class action (and there is no evidence to support that conclusion), they have likely opted not to sue at all, instead waiting to see whether the Republic will issue a new exchange offer, a possibility that the Republic announced in September it is actively considering.

In the face of these undisputed facts, Mr. Brecher's counsel offers nothing more than pure speculation that the class of bondholders he seeks to represent is sufficiently large to satisfy the numerosity requirement (while Mr. Brecher himself testified at his deposition that he knows of no other potential class members). But the law requires more than bare assertions; it requires Mr. Brecher to demonstrate numerosity by a preponderance of the evidence, something which he has not done, because he cannot. Likewise, as demonstrated by Mr. Brecher's deposition testimony, he has failed to meet the adequacy requirements of Rule 23 because he has merely lent his name to the action that has been (and would continue to be) controlled entirely by class counsel.

The class action mechanism would moreover be particularly inappropriate here, where all putative members of the class, including Mr. Brecher, are bound by the terms of a Trust Deed, which provides that the *sole* mechanism for asserting claims against the Republic is through the Trustee. Rule 23 may be invoked only where the class action mechanism would be "superior" to all other available forms of dispute resolution, *not* where a class representative simply seeks to avoid the dispute resolution mechanism to which he is contractually bound.

Even if Mr. Brecher were entitled to ignore the Trust Deed – which he is not – the class action mechanism would not be "superior" to individual claims. Individuals who wish to sue on bonds issued by the Republic would gain no advantage from the existence of the class action mechanism: the only issues in dispute – the issues concerning each member's purported beneficial ownership of bonds and damages – will exist whether the claims are asserted in the context of a class action, or through individual actions. For the same reason, the proposed class also fails to meet the predominance factor of Rule 23, which requires that the common issues *in dispute* predominate over individual issues.

## FACTUAL BACKGROUND

### A. Mr. Brecher Seeks To Represent A Class Of EMTN Bondholders

Mr. Brecher purchased interests in a Republic-issued bond, bearing the ISIN XS0113833510 (the "EMTN Bond"), on two separate occasions in late 2000 and early 2001 (together totaling €52,000). See Compl. ¶ 21. On each occasion his broker warned him that the investment risk was "high" and "extreme," Brecher Depo. Tr. at 154, 175, but Mr. Brecher testified at his deposition that he nevertheless decided to make the purchases in order to realize the high yields offered by the EMTN Bond. Id. at 176, 184.

On December 19, 2006, Mr. Brecher (through his counsel) filed a complaint on behalf of himself and "all persons who from the date of class certification until final judgment in the District Court continuously hold bonds issued by Argentina with ISIN XS0113833510, a coupon rate of 9.25% and a maturity date of July 20, 2004." Compl. ¶ 1. Although the pleading was ostensibly filed in Mr. Brecher's name, when shown the complaint at his deposition, Mr. Brecher demonstrated a complete lack of familiarity with its contents, admitting that he knew of no basis for several of the key allegations, except that "[m]y attorney said so." Brecher Depo.

Tr. at 267:22; id. at 268:9-10 ("Again, same answer, because my attorney says so."). Mr. Brecher also admitted that it was not his own decision to bring the class action, and that he did not even know who had actually made that choice. Id. at 276:17-19 ("it was not my decision to bring the action"); id. at 278:10-11 ("I honestly don't know who decided").

Nevertheless, almost two years later, putative class counsel filed the present motion for certification of a class led by Mr. Brecher and consisting of:

> [A]ll persons who own beneficial interest in a bond [identified as ISIN XS0113833510] issued by the Republic and who have suffered damages as a result of Argentina's default in December 2001.

Pl.'s Mot. for Class Certification, dated July 31, 2008, ¶¶ 1-2. The series of bond covered by the proposed class was issued pursuant to the Republic's Euro Medium-Term Note Programme (the "EMTN Programme").

**B. The Vast Majority Of EMTN Bondholders Have Rejected The Class Action Mechanism**

The vast majority, if not all, of the holders of the EMTN Bond that Mr. Brecher seeks to represent in the instant class action have already rejected the class action mechanism – by 1) participating in the Republic's 2005 exchange offer, 2) bringing an individual action in this Court, or 3) expressly opting out of Mr. Brecher's class action in order to pursue claims in an entirely different forum.

First, in 2005, holders of beneficial interests of approximately 59% of the principal amount of the EMTN Bond outstanding at that time chose to participate in the Republic's exchange offer, thereby rejecting litigation altogether (let alone the class action mechanism proposed by Mr. Brecher here). EMTN bondholders tendered approximately $874 million worth of beneficial interests in EMTN Bond in the 2005 exchange offer, thereby

reducing the total amount of outstanding principal for this series of EMTN Bond from approximately $1.48 billion to approximately $606 million.[2] See Prospectus Supplement of the Republic of Argentina, dated Jan. 10, 2005, at C-9 (Ex. B); 18-K, dated Dec. 31, 2007, at E-10 (Ex. C).

Second, of the approximately $606 million worth of EMTN Bonds outstanding after the Republic's 2005 exchange offer, a holder of a beneficial interest in the EMTN Bond of up to $37 million brought an individual lawsuit against the Republic, thereby expressly rejecting the class action mechanism proposed by Mr. Brecher here.[3] Thus, the total amount of EMTN Bonds currently outstanding that are definitively not the subject of individual claims is approximately $569 million.

Third, 16,270 individuals holding beneficial interests in the remaining $569 million worth of EMTN Bonds have ***expressly opted*** out of the proposed Brecher class, choosing instead to assert claims against the Republic in an entirely different forum, the International Centre for Settlements of Investment Disputes ("ICSID").[4] See Mukhi Decl. ¶ 2; Statement of

---

2 Amounts originally listed in Euros have been converted to U.S. dollars using the exchange rate used by the Republic in calculating amounts of principal currently outstanding in its 18-K, filed December 31, 2007 – a rate of 1.48.

3 See Capital Ventures Int'l v. Republic of Argentina, 05 Civ. 4085. CVI ultimately amended its complaint to exclude the EMTN Bond, which more than likely was a recognition that it lacked the capacity to sue on the bond because its terms provide that any such action must be instituted by the designated Trustee. See infra Point II.A. CVI's original complaint brought suit on principal of approximately $111 million in Republic-issued debt and the amended complaint (which excluded the EMTN Bond among others) reduced that amount to approximately $74 million.

4 While the Republic disputes those plaintiffs' ability to seek resolution of their claims through ICSID on a variety of jurisdictional and other grounds, their decision to affirmatively opt out of the proposed class demonstrates that they have rejected the class mechanism proposed by Mr. Brecher here.

Opt-Out from Certified and Putative Class Actions, dated May 16, 2007, Annex A (Docket No. 7); Notice of Errata to Previously Filed Opt-Out Statements, dated Feb. 29, 2008 (Docket No. 9).

The opt-out notices do not declare the size of the beneficial interests held by these individuals and, as the Court is aware, the Republic has no way of independently confirming the amounts held by each of those individuals due to the global holding clearing system through which the EMTN Bonds are held. See Million Air Corp. v. Republic of Argentina, No. 04 Civ. 1048 (TPG), 2005 WL 2656126, at *1-*2 (S.D.N.Y. Oct. 17, 2005). But the sheer volume of bondholders that have affirmatively opted out of the proposed class – over ***16,000*** – demonstrates that there are extremely few, if any, people left who could possibly participate in the proposed class. Unsurprisingly, Mr. Brecher himself knew of no such persons. See, e.g., Brecher Depo. Tr. at 243:23-25. Indeed, if the Court were to assume that each of the individuals that have opted out holds approximately **half** the same principal amount of the EMTN Bond as Mr. Brecher (who holds $77,000) then together those 16,270 individuals would hold more than $625 million in EMTN Bonds – well more than the $569 million currently outstanding.[5]

Unlike Mr. Brecher, class representatives in other class actions before this Court concerning Republic-issued debt in which large numbers of individuals have opted out to pursue ICSID claims have provided the Court with evidence to demonstrate the amount held by those individuals, so that the Court could confirm the maximum amount of debt held by potential members of the proposed class. See Letter from Bertrand Sellier to Court, dated July 3, 2008, in Seijas v. Republic of Argentina, 04 Civ. 400 ("Sellier Letter") (Ex. D). Mr. Brecher has made no effort to do so here.

5 Even if one did not consider the up to $37 million claim brought by CVI, $625 million held by the 16,270 other opt-outs would still be greater than the amount of outstanding principal of the EMTN Bond.

Finally, even if Mr. Brecher could demonstrate that there were any remaining holders of the EMTN Bonds that had not already rejected the class action mechanism by participating in the Republic's 2005 exchange offer, electing to pursue an individual claim against the Republic, or expressly opting out of Mr. Brecher's proposed class, any such remaining bondholders may very well have chosen to forego litigation entirely, opting instead to bide their time in the hopes of an increase in the value of their bonds on the secondary market, or a subsequent exchange offer. In fact, as this Court is aware, in September 2008, the Republic publicly announced its intention to consider a proposal made by investment banks representing bondholders to restructure the debt of its holdout creditors in an effort to resolve the ongoing debt crisis. Mr. Brecher offers no explanation for how the class action he proposes could serve to facilitate that process in any way; indeed, it could serve only as a hindrance.

### C. The Trust Deed Governing The EMTN Bonds Provides The Sole Mechanism For Asserting Claims Against The Republic

The EMTN Bonds are governed by a Trust Deed, which sets forth the terms and conditions of bonds issued under the EMTN Programme and is interpreted under English law. See Trust Deed Relating to the Republic of Argentina U.S. $ 1,000,000,000 Euro Medium-Term Note Programme, dated July 27, 1993 ("Trust Deed"), Terms and Conditions § 18(a) (Governing Law, Jurisdiction and Waiver of Immunity) (Ex. E). The Trust Deed governing the EMTN Bonds provides that:

> At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against the Republic or Banco Central, as the cases may be, as it may think fit to enforce the terms of the Trust Deed, the Notes, the Coupons and the Banco Central Undertaking, *but it need not take any such proceedings unless* (a) it shall have been so *directed by an Extraordinary Resolution* [(a resolution passed at a duly convened meeting of Noteholders by a majority consisting of less than 50% of the votes cast in accordance with Condition 11)] *or* so *requested by Noteholders holding at least 25 per cent*

> in principal amount of the Notes of the relevant Series outstanding, and (b) it shall have been indemnified to its satisfaction. *No Noteholder or Couponholder may proceed directly against the Republic . . . . unless the Trustee, having become bound so to proceed, fails to do so* within the reasonable time and such failure is continuing.

Trust Deed, Terms and Conditions § 12 (Enforcement) (emphasis added). Similarly, under Section 10 of the Trust Deed (Events of Default), *only* the Trustee is authorized, upon a specified "event of default," to take action such as declaring the principal amount of the securities to be due and payable. See id. § 10. This "no action" clause is a standard provision in debt instruments and is enforceable under English law. See Decl. of Matthew Hardwick, dated Mar. 22, 2007 ("Hardwick Decl."), ¶¶ 28-29 (Ex. F).[6]

By notice dated January 24, 2006, the Trustee notified holders of the EMTN Bonds how they could direct the Trustee to take action against the Republic on the defaulted bonds if they were so inclined. See Notice to Noteholders, dated Jan. 24, 2006 (the "Notice"), Direction of Noteholder (the "Direction"), dated Jan. 24, 2006 (Ex. G). Although Mr. Brecher received the Notice and the Direction, see Brecher Depo. Tr. at 271, he did not direct the Trustee to take action against the Republic. See id. at 220-21. Instead, after receiving notification from the Trustee concerning the process for directing it to take action against the Republic, on December 22, 2006, Mr. Brecher's counsel sent a letter to the Trustee demanding acceleration of principal and interest due with respect to his $77,000 beneficial interest in the EMTN Bonds. See Letter from R. Gaudet, Jr. to E. Leedham, dated Dec. 22, 2006 (Ex. H). There is thus *no* evidence before the Court to support Mr. Brecher's attempt to "proceed directly against the Republic" in direct contravention of the express terms of the Trust Deed let alone to supplant the Trustee entirely as he seeks to do by the instant motion for class certification.

---

6 At his deposition Mr. Brecher testified that he had never read the Trust Deed, and did not know who the Trustee was. See Brecher Depo. Tr. at 202-03.

Mr. Brecher has never so much as alleged that the Trustee for the EMTN Bonds has become "bound to proceed" against the Republic: in his complaint and here on class certification, he has offered *no* evidence that the Trustee has been directed to take action by an "Extraordinary Resolution" or that the Trustee has been "so requested by Noteholders holding at least 25 percent in principal of the Notes of the relevant Series outstanding," as required by the express terms of the Trust Deed. Trust Deed § 12 (Ex. E). Not surprisingly, Mr. Brecher admitted at his deposition that he lacked any evidence demonstrating that these conditions necessary for him to bring suit have been met, see Brecher Depo. Tr. at 205-06, because it is indisputable that they have not been met.

**ARGUMENT**

Before certifying a proposed class action, a district court must make a determination "that *each* of the Rule 23 requirements has been met." In re IPO, 471 F.3d at 41 (emphasis added). "[S]uch determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." Id. As the Second Circuit recently explained, it has "disavowed any implication in our earlier decisions that the 'some showing' standard may apply to Rule 23 issues and require[s] district courts 'to assess all of the relevant evidence admitted at the class certification stage' when determining whether to grant a Rule 23 motion." Teamsters, 546 F.3d at 202 (quoting In re IPO, 471 F.3d at 42) (affirming denial of motion for class certification)); see also id. ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to establish Rule 23's requirements.").

The burden of demonstrating as a factual matter that each of Rule 23's requirements has been satisfied falls squarely upon the movant, here Mr. Brecher. See Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig., 250 F.R.D. 137, 149 (S.D.N.Y. 2008) (granting motion to reconsider order certifying class based on evidentiary standard required by In re IPO, and concluding that "the Court finds that Plaintiff has not carried his burden of demonstrating that each element of Rule 23 is met. Accordingly, Defendants' Motion for Reconsideration and to decertify the class is granted."); Ruggles v. Wellpoint, Inc., No. 1:08-CV-201, 2008 WL 4346812 (LEK), at *4 (N.D.N.Y. Sept. 24, 2008) ("To qualify for certification, a plaintiff bears the burden of proving that the putative class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the categories provided in Rule 23(b).").

**POINT I**

**THE PROPOSED CLASS FAILS TO SATISFY THE REQUIREMENTS OF RULE 23(A)**

**A. There Is Insufficient Numerosity**

A class may be certified only if, among other things, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict numerical standard to meet this requirement, plaintiffs bear the burden of demonstrating impracticability of individual joinder. See Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968) ("those seeking to maintain an action as a class action must make a positive showing that it would be impracticable to deny the prayer"). "Although the court may make common sense assumptions to support a finding of numerosity, it cannot do so on the basis of pure speculation without any factual support." Jeffries v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus., 172 F. Supp. 2d 389, 394 (S.D.N.Y. 2001) (denying motion for

class certification where numerosity requirement not satisfied); see also Edge v. C. Tech Collections, Inc., 203 F.R.D. 85, 89 (E.D.N.Y. 2001) (denying class certification where claims of numerosity were based on "pure speculation or bare allegations" that because defendant was an established collection agency, it has "almost certainly" sent out hundreds and thousands of letters similar to the one received by plaintiff). Rather, a district court must determine whether the *plaintiff* has carried his burden of demonstrating that each element of Rule 23 has been proven by a preponderance of the evidence. See Kapiti, 2008 WL 3874310, at *4-*5 (denying class certification where plaintiff failed to demonstrate numerosity requirement of Rule 23).

The evidence before the Court demonstrates that the vast majority, if not virtually all, of the potential class members have "voted with their feet" *against* a class action by participating in the Republic's 2005 Exchange Offer, initiating a separate individual suit in this Court, or otherwise expressly opting out of Mr. Brecher's proposed class. See supra at 4-6. Notably, in other class actions pending against the Republic in which numerous individuals have expressly opted out of the proposed class, counsel produced evidence to demonstrate the amount held by those opt-outs so that the Court could determine the maximum amount of beneficial interests in Republic-issued bonds held by potential members of the proposed class. See Sellier Letter (Ex. D).[7] Mr. Brecher has made no effort to provide such evidence here, without which he simply cannot meet his burden of demonstrating by preponderance of the evidence that the numerosity requirement has been satisfied. See Kapiti, 2008 WL 3874310, at *4-*5; Zeidman v.

---

7 Any suggestion that ICSID claimants cannot opt out before the class is certified is a straw man. The individuals in the White & Case group, in addition to prosecuting the ICSID arbitration, have filed a "placeholder" action in this Court, which the Court has stayed pending the resolution of the ICSID proceedings. See Order, dated Mar. 23, 2007, in Agritech S.R.L. v. Republic of Argentina, 06 Civ. 15393 (TPG). To ignore the stated desire of thousands of individuals to opt out of Mr. Brecher's litigation simply because those individuals have not received class notice would contravene basic class action law principles.

J. Ray McDermott & Co., 651 F.2d 1030, 1040 (5th Cir. 1981) ("Where an admittedly large and potentially dominant group is excluded from a plaintiff's purported class, it is obviously difficult to estimate the numerosity of the plaintiff's class absent some evidence of the size either of the excluded group or of the remaining class.").

Moreover, even if there were any remaining holders of the EMTN Bonds that had not already rejected the class action mechanism, any such bondholders may very well have chosen to forego litigation entirely, opting instead to bide their time in the hopes of an increase in the value of their bonds on the secondary market, or a subsequent exchange offer by the Republic. Such a choice would be consistent with the Republic's recent announcement that it intends to consider a proposal made by investment banks representing bondholders to restructure the debt of the bondholders that did not participate in the 2005 exchange offer. See Berlev v. Dreyfus & Co., 43 F.R.D. 397, 398-99 (S.D.N.Y. 1967) ("If a class of interested litigants is not already in existence the court should not go out of its way to create one without good reason.").

In light of these facts, the only reasonable conclusion is that the overwhelming majority of bondholders – if not all – that would be eligible to participate in the class proposed in this action do not wish to do so. See Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66, 71 (E.D.N.Y. 2000) ("Just as there is a 'common sense assumption' to support a finding of numerosity, it should follow that the Court may make a 'common sense assumption' against numerosity.").[8] Plaintiff's conjecture in his motion papers to the contrary is insufficient to

---

8 In Petersen v. Federated Development Co., 387 F. Supp. 355 (S.D.N.Y. 1974), the plaintiff sought to represent a subclass of shareholders who did not tender their shares into a tender offer due to alleged fraud in the tender offer process, but could not identify with any reasonable certainty the number of shareholders who might be included in the class. Acknowledging that a showing of numerosity is the plaintiff's burden, the court found that the "plaintiff has failed to show numerosity. It appears that 1,396,602 [87.3%] of the 1,599,714 outstanding Federated shares were tendered to SMR during the period of its offer. Plaintiff has made no showing of the

overcome these facts and fails as a matter of law to support class certification. See Pl.'s Mem. of Law in Support of Class Certification, dated July 31, 2008 ("Brecher Br."), at 5 (asserting in conclusory fashion that "[t]here are thousands of owners of beneficial interests in the Bond"). In fact, Mr. Brecher testified at his deposition that he was not aware of *any* EMTN holder (other than himself) who is interested in participating in this class action. See Brecher Depo. Tr. at 243:23-25.[9]

Mr. Brecher has thus utterly failed to demonstrate by a preponderance of the evidence, as he is required under the Second Circuit's decisions in In re IPO and Teamsters, that the numerosity requirement is satisfied; the instant motion must be denied on this ground alone. See In re IPO 471 F.3d at 40; Teamsters, 546 F.3d at 202; see also Kapiti, 2008 WL 3874310, at *4-*5 ("Having been presented with only a large pool of persons within which a class may or may not exist, without more the Court may not reason, in good faith, that numerosity has been met.") (quotations and citations omitted); Pecere, 194 F.R.D. at 70 (class certification must be denied where a plaintiff has "failed to proffer any evidence to permit a reasonable estimate of the number of persons who fit within the proposed class.").[10]

---

number of shareholders who held the approximately 200,000 shares not tendered to SMR and who might have claims similar to plaintiff's." Id. at 360-361.

9 See also Brecher Depo. Tr. at 283:6-10 ("Q. Do you know any holders of your EMTN bonds who have expressed an interest in participating in this litigation as a class member? A. No."); id. at 280:16-21 ("Q. Do you know how many potential members there are of your class? A. I have no idea. Q. Do you know the amount of debt held by the potential class? A. No.").

10 Mr. Brecher has also failed to demonstrate that absent class certification individual joinder would be impracticable, the underlying purpose of the numerosity requirement. See Fed. R. Civ. P. 23(a)(1) (certification permitted only where "the class is so numerous that joinder of all members is impracticable."); Demarco, 390 F.2d at 845 ("those seeking to maintain an action as a class action must make a positive showing that it would be impracticable to deny the prayer"). As the Court is aware, approximately 130 lawsuits on behalf of more than 640 individual plaintiffs have been filed against the Republic, seeking judgments based on ownership of the Republic's non-performing debt – including claims as small as $1,000, and as large as almost $600 million – thereby demonstrating that individual bondholders are entirely capable of asserting claims against

Nor is there any merit to Mr. Brecher's argument that "[t]he exact number and identity of class members . . . can be ascertained at a later date by examining [Argentina's] records." Brecher Br. at 6 (citation omitted). Indeed, in Kapiti, 2008 WL 3874310, at *5, Judge Berman recently rejected precisely the same argument: "Plaintiff's proposal that '[i]f certification is granted, plaintiff will subpoena from defendants all CEU case files for the past five years to ascertain class members for notice and [trial] purposes' demonstrates the speculativeness of how many class members exist." Id. (citations omitted);[11] see also Reese v. Arrow Fin. Servs., LLC, 202 F.R.D. 83, 91 n.5 (D. Conn. 2001) (plaintiff's proposal to conduct "additional discovery as to numerosity . . . misconceives the nature of the burden on a plaintiff moving for class certification: plaintiff must show that the requirements of Rule 23 have been met before the class can be certified."); Green v. Borg-Warner Protective Servs.Corp., No. 95 Civ. 10419 (RPP), 1998 WL 17719, at *3 n.10 (S.D.N.Y. Jan. 16, 1998) ("If the alleged [harm] at issue is as widespread as asserted . . . it is reasonable to expect that plaintiffs would have provided considerably more evidence . . . than the eleven or twelve incidents placed before the Court to establish numerosity.").[12]

---

the Republic, when so inclined. See Kamm v. Cal. City Dev. Co., 509 F.2d at 212 & n.17 (9th Cir. 1975) (class action was not superior where, inter alia, the plaintiffs could bring "individual suits," and there was evidence that at least some plaintiffs wanted to keep their property notwithstanding the land fraud alleged in the class action); supra at 4-6.

11 In support of this position, Mr. Brecher cites Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 51 (S.D.N.Y. 1987). See Brecher Br. at 6, 7. But the defendant in Genden did not assert that the numerosity factor had not been satisfied – indeed, it was undisputed that the proposed class might well consist of more than 150,000 members. The Genden court, facing clear evidence of numerosity, simply left to another day the question of the exact composition of the class.

12 Even if it were appropriate to permit Mr. Brecher to conduct discovery concerning the numerosity requirement after certification – which it is not – any discovery directed to the Republic on that issue would be misplaced. As the Court is aware, the Republic has no ability to ascertain the identity of bondholders, whose bonds are held through global clearing systems. See Million Air Corp., 2005 WL 2656126, at *1-*2.

**B. Mr. Brecher Fails To Satisfy The Adequacy Requirements of Rule 23(a)**

In order to be an adequate class representative under Rule 23(a), the proposed representative must "not simply lend[ ] his name to a suit controlled entirely by the class attorney," as the class is "entitled to an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit." Beck v. Status Game Corp., 1995 WL 422067, No. 89 Civ. 2923 (DNE), at *4-*6 (S.D.N.Y. 1995) (quotation marks omitted). Here, Mr. Brecher's deposition testimony makes clear that far from being a "check" on counsel, he is acting at their complete behest and is thus an inadequate representative of the putative class.

In fact, Mr. Brecher testified that it was not his own decision to bring a class action and that ***he did not even know who made the choice to bring this action***. Brecher Depo. Tr at 276:18-19 ("it was not my decision to bring the action"); id. at 278:10-11 ("I honestly don't know who decided"). Thus, predictably, when asked about his basis was for several key allegations in the class action complaint, Mr. Brecher candidly answered that he had no basis for the assertions except that "[m]y attorney said so." Id. at 267:22; id. at 268:9-10 ("Again, same answer, because my attorney says so."). Indeed, Mr. Brecher admitted that several allegations in the complaint were plainly contradicted by his own documents, including the amount of his purported holdings and whether he had received communication from the EMTN Trustee. Compare Compl. ¶ 36 ("Plaintiff did not receive a copy of the Notice [sent on January 24, 2006]") with Brecher Depo. Tr. at 271:5-8 ("Q. So is the statement that you did not receive a copy of the January 24, 2006 notice an accurate statement? A. No.").[13] Mr. Brecher was also

---

[13] Mr. Brecher's discovery responses also had several inaccuracies, including failing to identify prior litigation he was party to in response to a specific interrogatory on that question (which the Republic deemed amended by his deposition testimony). See Brecher Depo. Tr. at 80-110.

completely unaware that thousands of individuals had opted out of the class he seeks to represent. See id. at 261:10-13 ("Q. Were you aware that certain individuals had filed a statement in your case saying they did not want to be a party of your class action? A. No."); id. at 283:11-14 ("Q. . . . are you aware of any EMTN bondholders who have declined to participate in this litigation? A. No.").[14]

The risk of having an apparent "pawn of counsel" representing the class is especially acute here, because class counsel represents other class action plaintiffs who would be competing with Mr. Brecher's class to reach the Republic's property. In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 136 (S.D.N.Y. 2008) (proposed class representative was inadequate because he could not be "relied upon to protect the interests of the class against the possibly competing interests of the attorneys"). Without an adequate representative who is willing and able to act as a "check" on the otherwise unfettered discretion of counsel, the rights of the proposed class members here (of the few that actually exist) would undoubtedly be compromised because of counsel's competing obligations to other potential classes and their members. See Brecher Depo. Tr. at 294:3-6, 296:15-19 ("Q. Do you intend to share any recovery with members of other class actions? [Objection] A. I never considered the question. . . . Q. Do you know what would happen if various classes against the Republic that obtain judgments all wanted to collect against the same asset? A. No."). Because Mr. Brecher demonstrated that he is at best a passive participant in this litigation, he is inadequate to fill the role of class representative.

---

[14] Mr. Brecher also failed to demonstrate a basic understanding of his duties as a would-be class representative, including providing class notice and adequately informing the potential members of consequences of joining the class. See Brecher Depo. Tr. at 286, 290:19-21.

## POINT II

## THE PROPOSED CLASS ACTION FAILS TO SATISFY THE SUPERIORITY OR PREDOMINANCE REQUIREMENTS OF RULE 23(B)(3)

A plaintiff seeking class certification must establish that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" *and* that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Mr. Brecher offers no evidence to support a finding that his proposed class action satisfies either of these factors. See Teamsters, 546 F.3d at 202 (plaintiff bears burden of demonstrating by preponderance of evidence that each of the Rule 23 factors has been satisfied). In fact, the only evidence before the Court demonstrates that it does not.

### A. The Proposed Class Action Fails Under The Superiority Requirement Of Rule 23(b)(3)

Mr. Brecher cannot meet his burden of demonstrating that his proposed class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority inquiry is necessary because the quasi-legislative character of the class action is a departure from normal adjudication, and is therefore to be deployed only where other solutions are inadequate. See Fed. R. Civ. P. 23, Advisory Committee Notes to the 1966 Amendment, subdivision (b)(3) (relevant analysis is whether "another method of handling the litigious situation may be available which has greater practical advantages. . . . [T]he court with the aid of the parties ought to assess the relative advantages of alternative procedures for handling the total controversy."); 7AA Charles A. Wright, et al., Federal Practice and Procedure § 1779, at 171-74 (3d ed. 2005) ("The court need not confine itself to other available 'judicial' methods of handling the controversy in deciding the superiority

of the class action . . . [for] the purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.").

**(i) Mr. Brecher May Not Supplant The Enforcement Mechanism Contemplated By The Trust Deed With A Rule 23 Class Action**

Mr. Brecher cannot be heard to say that the class action he proposes is "superior" to the mechanism for asserting claims against the Republic provided under the terms of the Trust Deed to which he is contractually bound. As Mr. Brecher (or more accurately, his counsel), would have it, the mere existence of Rule 23 would eviscerate the plain language of the enforcement provisions of the Trust Deed, which preclude him from supplanting the Trustee as the party with the sole authority to initiate litigation on behalf of EMTN bondholders against the Republic. But he cites no law in support of this position, and there is none.

Under the express terms of the Trust Deed governing the EMTN Bonds, Mr. Brecher cannot pursue claims in connection with those bonds:

> *No Noteholder or Couponholder may proceed directly against the Republic* . . . unless the Trustee, *having become bound so to proceed*, fails to do so within the reasonable time and such failure is continuing.

Trust Deed § 12 (Enforcement) (Ex. E) (emphasis added). Similarly, under Section 10 of the Trust Deed (Events of Default), ***only the Trustee*** is authorized, upon a specified "event of default," to take action such as declaring the principal amount of the securities to be due and payable. See id. § 10.

Trust deeds like the one upon which Mr. Brecher sues are recognized by the governing English law as preventing unilateral bondholder litigation: "Under English trust law, a trustee represents the interest of bondholders, and has the potential benefit that *no individual bondholder can unilaterally launch litigation*." Liz Dixon & David Wall, Bank of England,

Collective Action Problems and Collective Action Clauses, Financial Stability Review: June 2000, at 144 (emphasis added); see also id. at 145 ("individual bondholders cannot themselves launch litigation"). The relevant case law reflects that a bondholder must rely on the trustee to vindicate its rights. See, e.g., Concord Trust v. The Law Debenture Trust Corp plc, [2005] 1 W.L.R. 1591, 1598 (House of Lords, Apr. 28, 2005) (under similar trust deed structure, "trustee has broad discretionary powers to take such action, including but not limited to the commencement of legal proceedings, as it thinks fit").[15]

Mr. Brecher does not allege that the Trustee for the EMTN Bond has become "bound to proceed" against the Republic: he has offered *no* evidence that the Trustee has been directed to take action by an "Extraordinary Resolution" or that the Trustee has been "so requested in writing by Noteholders holding at least 25 percent in principal of the Notes of the relevant Series outstanding," Trust Deed § 12 (Ex. D), and indeed there is no such evidence. See Brecher Depo. Tr. at 222:13-16 ("Q. . . . you, personally cannot bring a claim unless 25 percent of the noteholders – A. Well, yes, whatever the condition.") (emphasis added). By his own admission, he is unable to demonstrate by preponderance of the evidence that the Trustee has failed to act within "reasonable time." See id. at 267:24-268:5 ("Q. . . . "'The trustee has failed to take action within a reasonable time and such failure is continuing.'" [quoting Compl. ¶ 35]. Do you know what the basis for that statement is? A. No."). Critically, under In re IPO and Teamsters, Mr. Brecher bears the burden of demonstrating each of these facts prior to arguing

15 English courts, like New York courts, interpret contracts as written. See Investors Comp. Scheme Ltd. v. W. Bromwich Bldg. Soc., [1998] 1 W.L.R. 896, 904 (House of Lords, June 19, 1997) (under English contract principles, "it is, after all, from the words used that one must ascertain what the parties meant."). Clauses such as those contained in the Trust Deed are common in English law, and are intended "to prevent the race of the most diligent with the consequent risk of preferential payments to those bondholders who are able to act most quickly; to prevent a multiplicity of suits; and to avoid action by a single bondholder which jeopardises the common security or results in conflicting enforcement actions." Hardwick Decl. ¶ 28 (Ex. F).

that he may sidestep the mechanism required by the Trust Deed for asserting claims against the Republic.[16]

Mr. Brecher cannot point to any case law that would permit him to replace the enforcement provisions of the Trust Deed to which he is contractually bound – and under which the Trustee would control any litigation brought against the Republic – with a Rule 23 class action controlled by his class counsel. See, e.g., William Goldman Theatres, Inc. v. Paramount Film Distrib. Co., 49 F.R.D. 35, 42 (E.D. Penn. 1969) ("while plaintiff has a perfect right to dispute this resolution or 'settlement' on its own behalf, it is inappropriate for plaintiff, under these circumstances, to seek to supplant the Department of Justice as a representative of other exhibitors throughout the United States."). Nor is there any support for the *ipse dixit* assertion in the complaint that the Trustee may be bypassed because it has a purported "conflict of interest." Compl. ¶¶ 36-37. Indeed, Mr. Brecher's deposition testimony conclusively demonstrated that he has absolutely no factual basis for alleging a Trustee conflict of interest – because none exists – and thus the allegation does not support proceeding outside of the provisions of the Trust Agreement. See Brecher Depo. Tr. at 208:3-8 ("Q. . . . [Any] reason that you know of that the trustee would not proceed against the Republic if it were required to do so? A. I have no knowledge on the subject at all."); id. at 211:8-11 ("Q. Any conflict of interest that the current trustee would have that would prevent it from making a demand of the Republic? A. No."); id. at 271:9-16 ("Q. . . . "'The [trustee's] notice improperly demanded prior payment from

16 In reality, Mr. Brecher ignored the terms of the Trust Deed and pursued class litigation even after receiving notice from the Trustee regarding the proper mechanism for bringing suit. The Trustee, acting in accordance with the Trust Deed, was prepared to proceed on behalf of noteholders to carry out its duties under the Trust Deed if the requisite percentage of noteholders asked it to do so. The Trustee notified noteholders, including Mr. Brecher, that it would be bound to proceed when "so requested in writing by Noteholders holding at least 25 percent in nominal value of the Notes," and provided the means by which noteholders could direct such action. See Notice, Ex. G.

bondholders as a precondition to taking action against the Republic on their behalf.'" [Quoting Compl. ¶ 36). Do you know the basis for this statement? A. I have no – no, I do not know the basis of that statement").[17]

In sum, Mr. Brecher has fallen woefully short of his burden to prove by a preponderance of evidence that he has satisfied Rule 23's superiority requirement, because the undisputed facts demonstrate that he is not even authorized to bring suit under the plain terms of the Trust Deed governing his bond.[18]

**(ii) Even If Mr. Brecher Were Entitled To Ignore The Terms Of The Trust Deed – Which He Is Not – The Proposed Class Action Would Not Provide A Superior Method Of Adjudication**

First, where, as here, thousands of potential class members have affirmatively rejected the class action mechanism, class treatment is demonstrably not "superior" to other forms of resolution. See Ingenito v. Bermec Corp., 376 F. Supp. 1154, 1171 (S.D.N.Y. 1974) ("the fact that many members of a proposed class have settled their disputes has been recognized as a significant factor in determining whether a class action is the superior method for adjudicating the controversy"); In re Stucco Litig., 175 F.R.D. 210, 218 (E.D.N.C. 1997) (denying motion for class certification and highlighting that "if [the opt-out] number is large, the class litigation will fail to achieve economies of scale."); Steinmetz v. Bache & Co., 71 F.R.D.

---

17 Indeed, the complaint alleged as proof of the Trustee's "conflict" that Wells Fargo (acting as the designee for the prior Trustee) unduly "discouraged" bondholders by making the observation that an action against the Republic "would be costly and lengthy." Compl. ¶ 36. At his deposition, not only did Mr. Brecher admit that he had no basis for that allegation, he also conceded that Wells Fargo's observation about the cost of litigation was a "reasonable assessment." Brecher Depo. Tr. at 214:9-21, 271:19-272:6.

18 The fact that the Court previously denied the Republic's motion to dismiss based on the terms of the Trust Deed does not allow Mr. Brecher to sidestep these requirements. See Barboni v. Republic of Argentina, 06 Civ. 5157, Order, dated Sept. 27, 2007 (concluding that it "cannot be determined on the present record" whether the Trust Deed precluded [plaintiff] from initiating suit directly against the Republic). That pleading ruling was based upon the application of Rule 12(b)(6), not Rule 23 – the latter of which squarely places the burden of proof upon the *plaintiff*.

202, 206 (S.D.N.Y. 1976) ("this court is satisfied both that this suit can proceed if class action treatment is denied and that such treatment is not 'superior' under the Rule to alternative methods of adjudication, including the individual bondholder suits already extant, the possible consolidation of the instant action with one or more of those suits presently before this court, the commencement of further individual suits, and any settlement negotiations which may continue between Bache and the purchasers of the bonds.").

Second, even if there were any EMTN bondholders remaining that had not already rejected the class action mechanism (again, Mr. Brecher has presented no evidence that any such bondholders exist) they would not benefit from certification of the proposed class. See Kamm, 509 F.2d at 212 (considering interests of the "public at large" in analyzing superiority). The same individual issues concerned with demonstrating ownership will exist whether the claims are asserted in the context of a class action, or through individual actions. Indeed, because liability in these suits is not in dispute, "there is simply no gain to be had from using the class action form." Robertson v. Monsanto Co., 287 Fed. App'x 354, 362 (5th Cir. 2008) (proposed class action failed superiority requirement under Rule 23 where liability had already been determined by prior summary judgment and "remaining issues of causation and damages [were] highly individualized"). Congress has expressly provided that the class action mechanism is appropriate only when it is *superior*, not merely equivalent, to other available methods of adjudication.[19]

[19] Granting class certification here would undermine the interest of bondholders in individually controlling the prosecution of claims. See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 615-16 (1997) (noting that "'the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit'" is an element under 23(b)(3) militating against class certification) (quoting 28 U.S.C.A. advisory committee notes to the 1966 Amendment, subdivision (b)(3)). More than 130 individual lawsuits involving more than 640 individual plaintiffs seeking recovery of an aggregate amount of more than $3.2 billion have been filed

Third, the class action mechanism proposed by plaintiff would undermine the traditional framework for resolving sovereign debt disputes – voluntary restructuring. In September 2008, the Republic publicly announced its intention to consider a proposal made by investment banks representing bondholders to restructure the debt of its holdout creditors in an effort to resolve the ongoing debt crisis. Should the Republic extend such an offer, certification of Mr. Brecher's class could serve as only a hindrance to that process, without any benefit to the class. See Whitney Debevoise & David Orta, The Class Action Threat to Sovereign Workouts, Int'l Fin. L. Rev., July 2003, at 44 (Ex. I) (in sovereign restructuring context, "using the class action mechanism to resolve the claims of creditors only serves to divert some of the finite resources available to satisfy [creditors'] claims to pay attorneys' fees for class counsel and the other expensive administrative costs associated with class certification such as class notice"); Steinmetz, 71 F.R.D. at 206 (class action was not superior to, among other things, "any settlement negotiations which may continue between Bache and the purchasers of the bonds"); Kamm, 509 F.2d at 211-12 (affirming denial of class certification based in part on defendant's participation in a "program to settle future disputes" – even though the court also accepted that the settlement value was not "even close to that sought in the class action"); Brown v. Blue Cross & Blue Shield of Mich. Inc., 167 F.R.D. 40, 47 (E.D. Mich. 1996) (denying class certification where state settlement was "not . . . perfect" but covered all but de minimis claims and class treatment was therefore not necessary). There is no benefit to any class of having contingency fee class action lawyers divert to themselves potentially large amounts of scarce resources that

---

against the Republic, demonstrating that individual bondholders are capable of bringing individual actions against the Republic.

would otherwise go to creditors when, by definition, the debtor state cannot pay its creditors in full even without such a toll being extracted.[20]

**B. The Proposed Class Action Fails Under The Predominance Requirement Of Rule 23(b)(3)**

"[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." 7AA Charles A. Wright, et al., Federal Practice and Procedure § 1778, at 134 (3d ed. 2005). The purpose of the "predominance" requirement under Rule 23(b)(3) is to ensure that the class mechanism is reserved for those situations in which common questions represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication. This is not such a case.

Although the Second Circuit has noted that "a concession [of liability] does not eliminate a common issue from the predominance calculus," In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006), a plaintiff must nevertheless demonstrate that the common, undisputed issue of liability in the case predominates over the individual issues concerning damages and ownership, which Mr. Brecher cannot. Indeed, as the Second Circuit clarified earlier this year – almost two years after In re Nassau – "[w]hile the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification . . . it is nonetheless a factor that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." McLaughlin v. American Tobacco Co., 522 F.3d 215, 231 (2d Cir. 2008) (citations and quotations omitted) (reversing

---

20 The median contingent fee in class actions is between 27% and 30% of the class's recovery, plus expenses; the average fee is between 20% and 40% of the recovery. See Thomas E. Wiliging et al., An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U. L. Rev. 74, 155 (1996).

order granting class certification and decertifying class where proposed class failed to satisfy predominance factor under Rule 23(b)(3)).

Here, the *only* disputed issues – ownership of individual interests in bonds and damages – are those unique to each putative class member. The proposed class therefore fails to satisfy the predominance factor under Rule 23(b)(3), and certification should be denied. See Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 324 (S.D.N.Y. 2003) ("class action is not suited to litigation [that is] heavily dependent on questions requiring individualized proof"); Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("where the issues of damages and impact does not lend itself to such mechanical calculation, but requires separate mini-trial(s) of an overwhelming large number of individual claims, courts have found that the staggering problems of logistics thus created make the damage aspect of (the) case predominate and render the case unmanageable as a class action") (citations and quotations omitted).

**CONCLUSION**

For the foregoing reasons, the motion for class certification should be denied.

Dated: New York, New York
December 19, 2008

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:____________________
Jonathan I. Blackman (jblackman@cgsh.com)
Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

Of Counsel:
Christopher P. Moore
Rahul Mukhi

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina