UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
HENRY H. BRECHER, Individually And On
Behalf Of All Others Similarly Situated,

                                  Plaintiff,

    v.

REPUBLIC OF ARGENTINA,

                                Defendant.
------------------------------------------------------- x

No. 06 CV 15297 (TPG)

ECF Case

**PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..........................................................................................................1

II. SUPPLEMENTAL FACTS ...........................................................................................2

III. ARGUMENT..................................................................................................................2

    A. The Proposed Class Satisfies the Requirements of Rules 23(a)(1) and 23(a)(4): It is Numerous and Mr. Brecher Represents it Adequately .....................2

        1. The Class is numerous – the "vast majority" of bondholders have not "rejected" the class action..................................................................2

            a. Thirteen hundred twenty one bondholders have filed notices indicating that they wish to "remain participants" in this case........3

            b. The filing of any individual lawsuits related to this bond does not constitute "rejection" of class action or destroy numerosity .....5

        2. Mr. Brecher will continue to fairly and adequately represent the class.......6

    B. The Proposed Class Action Meets the Superiority and Predominance Requirements of Rule 23(b).......................................................................................8

        1. The Trust Deed is not dispositive of the superiority of class adjudication..................................................................................................8

            a. The Republic's argument concerning "superiority" and the Trust Deed is a misplaced standing argument ..........................8

            b. Even if standing under the Trust Deed were considered at this stage of the proceedings, it should be resolved in favor of the bondholders..............................................................................9

        2. The proposed class action is the superior means of adjudication................9

    C. The Proposed Class Action Meets the Predominance Requirement of Rule 23(b)(3)...............................................................................................................10

IV. CONCLUSION............................................................................................................11

## I. INTRODUCTION

The Republic of Argentina admits its liability to Mr. Brecher and the proposed class for "the largest sovereign default in history,"[1] but continues its attempts to evade financial responsibility for the default by arguing that class treatment is unwarranted for the bond denominated as ISIN No. XS0113833510 and that the trust deed governing the bond now precludes any relief for these bondholders because the Trustee failed to act.[2] In doing so, the Republic neither distinguishes the eleven Argentina bond classes this Court previously certified for the same default nor explains why this proposed class should be treated differently.[3]

Contrary to the Republic's challenges, plaintiff has met all of the requirements of Rule 23. Documents relied on by the Republic confirm that the class meets the Rule 23(a)(1) numerosity requirement by identifying more than 1000 individuals who wish to remain in the case. Plaintiff has met Rule 23(a)(2) requirements by showing that there are questions of law or fact common to the class. Rule 23(a)(3) is satisfied as Mr. Brecher's claims are typical of the class. Rule 23(a)(4) is satisfied in that Mr. Brecher is a motivated, active representative who will fairly and adequately represent the class, and he is represented by counsel who are experienced in the prosecution of class actions involving complex commercial transactions. The class meets Rule 23(b)'s requirements in that common issues of law and fact predominate and class adjudication is superior to other means of resolution. The Trust Deed does not undermine this superiority. The requirements are discussed more fully in the Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Class Certification (Dkt. No. 12) and below.

The proposed class should be certified.

---

[1] Hal S. Scott, *Sovereign Debt Default: Cry for the United States, Not Argentina,* at 2 (Wash. Legal Found., Sept. 2006).

[2] Trust Deed Relating to the Republic of Argentina U.S. $ 1,000,000,000 Euro Medium-Term Note Programme, dated July 27, 1993 ("Trust Deed") (Mukhi Decl. in Support of Republic's Opp. to Class Cert., Ex. E).

[3] *See* Memorandum of Law in Support of Plaintiffs' Motion for Class Certification at 1 (listing the classes this Court previously certified) ("Pltf. Mot.").

## II. SUPPLEMENTAL FACTS

Plaintiff provided a neutral Statement of Facts in its Memorandum of Law in Support of Plaintiff's Motion for Class Certification. Pltf. Mot. at 2. The Republic does not dispute the statement. Plaintiff provides certain supplemental facts in various sections of this reply to correct misimpressions created by the "Factual Background" section of the Republic's opposition to class certification. Def. Opp. at 3-7. In particular, the Republic has provided incomplete facts concerning the putative opt-outs filed in the case and the individual lawsuit filed in connection with the bond. *See* §§ III.A.1, III.B, *infra*. In addition, the Republic's selective use of excerpts from Mr. Brecher's deposition is misleading. *See* § III.A.2 *infra*.

## III. ARGUMENT

A. **The Proposed Class Satisfies the Requirements of Rules 23(a)(1) and 23(a)(4): It is Numerous and Mr. Brecher Represents it Adequately[4]**

   1. **The Class is numerous – the "vast majority" of bondholders have not "rejected" the class action**

The threshold for numerosity under Rule 23 is not high. "[P]laintiffs need not provide a precise calculation of the size of the class, and courts are permitted to draw reasonable inferences from the available evidence, numerosity is presumed where the class consists of at least 40 members." *In re Parmalat Sec. Litig.*, 2008 U.S. Dist. Lexis 64296, at *15 (S.D.N.Y. Aug. 21, 2008). *See also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 84 (S.D.N.Y. 2007) ("common sense dictates that the purported plaintiff class is likely quite numerous"). This class meets the standard.

The Republic's opposition to class certification suggests that thousands of potential class members have affirmatively "rejected" the class action, making it impossible for the case to meet the numerosity requirements of Rule 23(a)(1). Def. Opp. at 4. But a closer look at the "evidence" the Republic offers to support its challenge to numerosity demonstrates that there has been no such rejection. Aside from the beneficial interests tendered to the Republic in the course

---

[4] The Republic does not dispute that plaintiff has met the requirements of Fed. R. Civ. P. 23(a)(2) and 23(a)(3).

of the 2005 exchange,[5] there has been no definitive resolution of bondholder claims. Currently, all affected individuals and entities who otherwise qualify under the proposed class definition in this case remain eligible to participate in the class action, as described below. Most importantly, the Notices of Errata that the Republic relies on to *disprove* numerosity actually *confirm* that more than 1,000 bondholders in addition to Mr. Brecher wish to participate in this proposed class action.

### a. Thirteen hundred twenty one bondholders have filed notices indicating that they wish to "remain participants" in this case

The Republic argues that the opt-outs filed on behalf of certain bondholders in this and other cases by White & Case demonstrate a "rejection" of the "class action mechanism" so as to defeat numerosity.[6] The Republic relies on the Statement of Opt-Out from Certified and Putative Class Actions, dated May 16, 2007, Annex A ("Statement of Opt-Out") (Dkt. No. 7) and the Notice of Errata to Previously Filed Opt-Out Statements, dated February 29, 2008 (Dkt. No. 9) ("Feb. 29, 2008 Errata") to support its argument. Annex A identifies as "opt-outs" from this class 16,270 individuals and entities holding beneficial interests in the bond who purportedly want to assert claims against the Republic through the International Centre for Settlements of Investment Disputes (the "ICSID plaintiffs"). These documents actually *confirm* the numerosity of the Class.

The Feb. 29, 2008 Errata identifies 497 individuals and entities who "should not have been listed in any Annex A" for the XS0113833510 bond and who, according to the Statement of

---

[5] It is public record that certain XS0113833510 bondholders tendered beneficial interests in the 2005 exchange, reducing the outstanding principal balance for the bond to approximately $606 million.

[6] It is questionable whether the putative "opt-outs" should even be considered prior to class certification. The Republic contends that the suggestion that ICSID claimants cannot opt out prior to class certification is a "straw man," but the Republic is wrong. Def. Opp. at 11 n.7. Prior to the certification of a class and the expiration of a formal opt-out period, putative class members are free to change their minds about participation. This Court has recognized the time line for opt-outs in the bond cases. *H.W. Urban GmbH v. Republic of Argentina,* 2006 U.S. Dist. Lexis 9668, at *5-6 (S.D.N.Y. Mar. 9, 2006) (Griesa, J.). The recent Notices of Errata filed in this case demonstrate the fluidity of bondholder claims at this stage of the proceedings. If a class is certified, judgment entered and a claims process established, *all* of the individuals on the White & Case notices are potentially eligible to participate in the class recovery if they meet the class requirements and have not otherwise resolved their claims. Given the fact that the Republic contests the ICSID plaintiffs' ability to seek resolution of their claims through the ICSID "on a variety of jurisdictional and other grounds," Def. Opp. at 5 n.4, this case could become an important recovery vehicle for eligible ICSID plaintiffs, but they do not have to decide at this stage.

The Republic's point about the stay the ICSID plaintiffs obtained in *Agritech S.R.L. v. Republic of Argentina*, 06 Civ. 15393 (TPG) is not clear. The stay does not appear to relate to this case.

Opt-Out, "*remain participants in the above-captioned actions,*" including this proposed class action. Dkt. No. 7 at 7 (emphasis added).[7] On December 23, 2008, four days after the Republic's opposition to class certification in this case was filed, White & Case filed a second Notice of Errata to Previously Filed Opt-Out Statements identifying 864 additional individuals and entities erroneously identified in Annex A who wish to "*remain participants in the above-captioned actions*," including this class action. Notice of Errata to Previously Filed Opt-Out Statements, dated December 23, 2008 (Dkt. No. 21) ("Dec. 23, 2008 Errata"). In sum, then, the Notices of Errata have identified 1321 individuals and entities who wish to "remain participants" in this case.

Although this number alone demonstrates numerosity, the Republic also makes an argument based on the "size of the beneficial interests held" by the individuals identified in the Statement of Opt-Out. Def. Opp. at 6. The Republic submitted a calculation based on the unsupported assumption that each of the 16,000 ICSID Plaintiffs who hold an interest in this bond held approximately half the principal amount of the bond as Mr. Brecher (who holds $77,000) and concluded that together the putative opt-outs held more than the amount outstanding on the bond. Def. Opp. at 5-6. The Republic's reliance on an assumption and calculation crafted by its lawyers is disingenuous where elsewhere in their submission they acknowledge that actual data is available. *See* Mukhi Decl. Ex. D (data concerning opt-outs in other Argentina bond class actions provided by White & Case to the parties and the Court).[8] Plaintiff has contacted White & Case about the issue. Reply Declaration of Jeniphr Breckenridge (Breckenridge Decl.), ¶ 8. At a minimum, the Republic should have provided the Court with an estimate of damages for the 1,321 individuals or entities that have indicated they wish to remain in the case using the same methodology. This would account for $50,858,500 in

---

[7] For purposes of this Reply, plaintiff accepts the Republic's methodology for calculating the number of individuals or entities who have indicated they wish to remain participants in the case. *See* Mukhi Decl. at ¶ 2. Plaintiff has not had the opportunity to discuss the filings and their implication with White & Case and reserves the right to supplement the submission on these points.

[8] Indeed, the Republic might have easily used the minimal figure of $1,000, which it cites elsewhere in its brief in reference to a bond claim filed against the Republic. Def. Opp. at 13 n.10 ("claims as small as $1000"). Both figures are unsupported.

defaulted principal, corroborating the arguments regarding numerosity and confirming that there remain substantial interests in the bond to adjudicate. Breckenridge Decl. ¶ 12.

### b. The filing of any individual lawsuits related to this bond does not constitute "rejection" of class action or destroy numerosity

The Republic's argument concerning an individual case involving the same bond similarly fails to demonstrate a "rejection" of class adjudication. Plaintiff cannot confirm that beneficial interests in this bond were the subject of an individual claim against the Republic in *Capital Ventures International v. Republic of Argentina,* 1:05-cv-04085-TPG (S.D.N.Y.).[9] Even if they were, it would not be inconsistent with a simultaneous class action on the same bond. *See H.W. Urban GmbH v. Republic of Argentina*, 2003 U.S. Dist. Lexis 23363, at *7 ("[C]ertain bondholders prefer to bring their own individual actions, and have done so. But for those who wish to be part of this proposed class action, it is reasonable for them to believe that it is superior to their bringing individual actions. For those who do not wish to be a part of the present class action, they will have an opportunity to make that choice."). Moreover, the filing of an individual lawsuit is not necessarily a "rejection" of a class action. The *Capital Ventures* case was filed eight months before *Brecher.* There is no evidence that in bringing its lawsuit to recover "principal of approximately $111 million in Republic-issued debt," Def. Opp. at 5 n.3, the *Capital Ventures* plaintiff took any position on the class action mechanism. Plaintiffs here can also not confirm whether the complaint was amended to exclude the XS0113833510 bond or why. Def. Opp. at 5. There is no basis for the Republic's conclusion that any exclusion "*more than likely* was a recognition that it lacked the capacity to sue on the bond." *Id.* (emphasis added). It is *just as likely* that any decision to exclude the bond was a recognition that this class action had been filed and would cover Capital Ventures' outstanding interests in the bond. Indeed, if Capital Ventures still owns beneficial interest in the bond and otherwise meets the

---

[9] The Republic cites no specific pleadings to support the "facts" it offers regarding the case. Instead, it cites generally to the case docket and its own description, with no supporting citations, about the outcome of the claim. Def. Opp. at 5 n.3. The Republic's estimate that the Capital Ventures' interest in XS0113833510 was "up to $37 million" may knowingly manipulate information available to it and not to plaintiff. The Republic obviously knows which bonds were part of the original lawsuit and which were included in the amended complaint in the case and could provide a more definitive estimate of the amount allocated to XS0113833510. *See id.* It chose not to.

- 5 -
001783-13 280916 V1

class definition, its $37 million beneficial interests are actually *part of this case.*

### 2. Mr. Brecher will continue to fairly and adequately represent the class

The Republic attacks Mr. Brecher as a "pawn of counsel," Def. Opp. at 16, and attempts to portray him as a befuddled litigant duped into lending his name to a lawsuit he knows nothing about. Def. Opp. 15-16. The Republic does this by selectively taking Mr. Brecher's deposition testimony out of context and ignoring the documents Mr. Brecher has produced in the case. *Id.* The argument is insulting to Henry Brecher, an independent academic who, in the aftermath of the Republic's default, doggedly pursued his financial and legal options here and in Europe and ultimately contacted his current counsel to take the case. Deposition Transcript of Henry Brecher (dated Oct. 13, 2008) at 249-57 (detailing his efforts to pursue remedies in wake of default) (Breckenridge Decl. Ex. A). Contrary to the Republic's aspersions, Mr. Brecher is a motivated, active participant in the litigation.

In complex actions such as this one, "a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance on the expertise of counsel is expected." *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008). The knowledge requirement has been called "modest." *Id.* (citing *Baffa v Donaldson, Lufkin & Jenrett Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000)). A lack of expertise in the subject matter is not a basis for disqualification.[10] The touchstone is whether the class representative is aware of the basic facts and is "unlikely to abdicate his obligations to fellow class members." *Id.* (citing *Wagner v Barrick Gold Corp.,* 251 F.R.D. 112 (S.D.N.Y. 2008)). Active involvement in litigation is a factor courts consider in evaluating a class representative's adequacy. *In re Parmalat Sec. Litig.*, 2008 U.S. Dist. Lexis 64296, at *27-28.[11]

---

[10] Mr. Brecher should not be blamed for any inaccuracies in the complaint. Def. Opp. at 15. The examples given by the Republic are easily remedied. Mr. Brecher cleared up any confusion via his testimony. In fact, prior to the deposition, Mr. Brecher had brought some of the so-called "inaccuracies" to his counsel's attention. Breckenridge Decl. at ¶ 3. Plaintiffs are prepared to submit an Amended Complaint to which they assume the Republic will agree.

[11] Notably, Mr. Brecher's time commitment to his role as class representative is the same as that of the approved class representative in *Parmalat*. He testified that he has "as much [time] as it takes." *See id*. at *28 ("as long as necessary").

Mr. Brecher's deposition testimony establishes that he meets these standards. He worked tirelessly to locate a lawyer to take his case in the first place, contacted numerous law firms including White & Case and specifically investigated the potential for a class action. Breckenridge Decl. Ex. A (Brecher Dep. at 249-257). He enrolled in two different organizations representing interests of bondholders affected by the default. *Id.* (Brecher Dep. at 239-40, 247). He was informed about and evaluated the Republic's 2005 exchange offer. *Id.* (Brecher Dep. at 230-31, 235-36). He ultimately contacted and conferred with his current counsel and "decided to go ahead with the suit." *Id.* (Brecher Dep. at 58). He provided the information for the complaint and reviewed it before it was filed. *Id.* (Brecher Dep. at 263-64). He has put extensive effort into responding to discovery, including drafting and typing responses to interrogatories and requests for production. *Id.* (Brecher Dep. at 72-79). He understands the damages in the case. *Id.* (Brecher Dep. at 264-65). He understands he is pursuing the case on behalf of the class. He attended his deposition, traveling from Columbus, Ohio to Manhattan and staying at a hotel at his own expense. *Id.* at 298-300. Mr. Brecher's testimony also reflects his frequent contacts with counsel.

Mr. Brecher's deference to counsel on strategic and substantive matters is appropriate. The Republic's questions concerning whether Mr. Brecher would share any recovery with members of "other class actions" and what would happen if "various classes against the Republic that obtain judgments all wanted to collect against the same asset," were unfair, bordering on badgering. Breckenridge Decl., Ex. A at 294, 296. The Argentina bond default has been called the "greatest sovereign default in history" and has commanded the attention of international legal, financial experts, and even diplomats. There has been protracted litigation lasting at least 8 years over the virtues of bond restructuring. No expert has been able to figure out how to resolve it. It would be inappropriate to expect a class representative to do so.

This case is unlike *In re Monster*, in which the class representative did not even know the name of the stock at issue in the case or the individual defendants, had not seen the complaint or anything else about the status of the case – circumstances which were so extreme that the court

called them "appalling." 251 F.R.D. at 135. Mr. Brecher has been and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

**B.  The Proposed Class Action Meets the Superiority and Predominance Requirements of Rule 23(b)**

    **1.  The Trust Deed is not dispositive of the superiority of class adjudication**

        **a.  The Republic's argument concerning "superiority" and the Trust Deed is a misplaced standing argument**

The Republic argues that the class cannot meet Rule 23(b)'s superiority requirement because the Trust Deed governing the bond provides an "enforcement mechanism" that would be "supplanted" if the class action were allowed to proceed. Def. Opp. at 18-20. This "superiority" argument is identical to standing arguments the Republic has made in other cases via motions to dismiss and motions for summary judgment.[12] The link the Republic tries to draw between the Trust Deed and superiority requirement is difficult to follow; the Republic deliberately conflates standing requirements with Rule 23 in order to make the argument. In fact, the Trust Deed provides no "enforcement mechanism." The Trust Deed outlines the steps to be taken by bondholders and the Trustee in the event of the default. The Trust Deed contemplates that litigation against the Republic may proceed in the event of a default,[13] but does not mention what "dispute resolution mechanism" should be favored. Def. Opp. at 18. There is nothing in the Trust Deed that supports the Republic's argument that class actions could not be found to be superior. The sole case the Republic relies on, *William Goldman Theatres, Inc. v. Paramount Film Distrib. Corp.,* 49 F.R.D. 35 (E.D. Penn. 1969), concerns a proposed class action which overlapped with an existing *settlement* negotiated by the Department of Justice. It is inapplicable here.

---

[12] The Republic suggests that the different burden for class certification warrants this result, but the Trust Deed is clearly not a class certification issue and thus there is really no good way to address it in the context of Rule 23's superiority requirements.

[13] In the Trust Deed, the Republic "irrevocably submits to the jurisdiction of the courts of England; any New York State or Federal court sitting in the Borough of Manhattan, New York City; and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Notes." Trust Deed, § 17 (*see* Mukhi Decl., Ex. E). The Republic has waived sovereign immunity for such actions. *Id.* at § 17.4. The Terms and Conditions of the bonds, which purportedly were published on the backs of the bonds, and were submitted by the Republic in opposition to class certification, discuss "proceedings" against the Republic or its bank without specifying what those proceedings are. *Id.* at Terms and Conditions, § 12 ("Enforcement").

### b. Even if standing under the Trust Deed were considered at this stage of the proceedings, it should be resolved in favor of the bondholders

The Republic has argued unsuccessfully in other cases that bondholders cannot sue because they have not met the requirements of the Trust Deed.[14] This Court addressed the issue of standing under the Trust Deed in a related case. In *Barboni*, the Court denied the Republic's motion to dismiss based on the Trust Deed, finding that it could not be determined on the available pre-discovery record that the conditions had not been met. *See* Order (Breckenridge Decl. Ex. B). "Indeed," this Court wrote, "[i]t is *surely probable that they are met, and that it would be fruitless to relegate plaintiff to acting through the trustee.*" *Id.* (emphasis added).

The futility of requiring the bondholders to act through the trustee and the state of English law on the question was also comprehensively addressed in the Declaration of Michael J. Beloff, QC submitted in support of plaintiff's opposition to Argentina's motion for summary judgment in *Lavaggi.* Breckenridge Decl. Ex. C.[15] Mr. Beloff considered the facts underlying the bond default and the trustee's conduct and described the status of English law.[16] In summary, Mr. Beloff concluded that the trustee's conduct constituted a "special circumstance" which justified an action brought directly in the bondholder's name. *Id.* at 9. Notably, the Republic addresses none of these points in their briefing and none is addressed in the Hardwick Declaration submitted by the Republic here. *See* Mukhi Decl., Ex. F (Declaration of Matthew Hardwick Supplemental to the Defendant's Memorandum of Law in *Capital Markets Fin'l Services Inc. v. The Republic of Argentina,* 06 CV 15301 (TPG) (Mar. 22, 2007)).

### 2. The proposed class action is the superior means of adjudication

The Republic submits three additional points it claims undermine the superiority of the

---

[14] Indeed, *Lavaggi v Republic of Argentina,* No. 04-cv-5068, the Republic submitted the same argument – nearly verbatim – as a standing challenge. (Dkt. No. 42 at 10.) In *Barboni v. Republic of Argentina*, No. 06-cv-5157 (S.D.N.Y. Sept. 27, 2007), the Republic raised the issue as a standing issue on a motion to dismiss. *See* Breckenridge Decl. Ex. B (Order).

[15] Mr. Beloff's credentials are set forth in Breckenridge Decl. Ex. C, Appendix (Beloff curriculum vitae).

[16] Plaintiff submits that the Trust Deed argument is misplaced at this stage of the proceedings. The Republic has established no nexus between its argument and Rule 23 requirements. Therefore, plaintiff summarizes Mr. Beloff's conclusions but do not fully address any legal issues raised by the Trust Deed. If the Court would like additional briefing on the topic or if the Republic raises the issue in another form, plaintiff will provide additional briefing.

class action to adjudicate the EMTN Bond default: (1) thousands of potential class members have "affirmatively rejected the class action mechanism;" (2) liability has been admitted, the only issues left are "highly individualized" damages claims; and (3) a class action would undermine "voluntary restructuring." Each point is easily rebutted. The first is addressed in § III.A.1, *supra.* The second point raises the same routine case management issues the Republic invokes to argue Rule 23(b)'s predominance requirement has not been met here. It is addressed in § III.C, *infra.*

The third point is absolute speculation. The class is not obligated to wait for a "voluntary restructuring" that may likely never materialize. It is disingenuous for the Republic to suggest otherwise. The prospect of a wide-scale debt restructure was first proposed in 2002 shortly after the default. The 2005 exchange offer was an attempt that commentators say had a relatively low acceptance rate due to its comparatively poor terms.[17] Seven years post-default, no other plan has ever made it to the markets. The cases the Republic cites do not provide a legal basis for holding that the prospect of a debt restructure – one that the class has no control over – destroys the superiority of the class or even that restructuring would be superior to class adjudication.[18]

## C. The Proposed Class Action Meets the Predominance Requirement of Rule 23(b)(3)

The Republic's final argument that the proposed class action fails to satisfy Rule 23(b)(3)'s predominance requirement intersects with its argument on Rule 23(b)(3) superiority. The Republic admits its liability for the bond default to Mr. Brecher and the other proposed class members, but argues that this admission leaves only issues unique to each class member as the "*only* disputed issues." Def. Opp. at 24-25. The Republic's concession of liability should not be used to destroy class adjudication. The issues "unique to each putative class member" identified by the Republic are ownership of individual interests in bonds and damages. These are easily

---

[17] *See, e.g.,* Hal S. Scott, *Sovereign Debt Default: Cry for the United States, Not Argentina,* at 4 (Wash. Legal Found., Sept. 2006).

[18] The three cases the Republic relies on to support deferral to the remote potential voluntary restructuring relate to class action superiority where settlements or settlement negotiations are in place and are not comparable to the potential for voluntary restructuring which the Republic cites here. *See Brown v Blue Cross & Blue Shield,* 167 F.R.D. 40, 47 (E.D. Mich. 1996); *Steinmetz v. Bache & Co.*, 71 F.R.D. 202 (S.D.N.Y. 1976); *Kamm v California City Dev.,* 509 F. 2d 205 (9th Cir. 1975).

addressed case management issues which are no different than the issues raised by other Argentina bond cases which have been certified. In *H.W. Urban v. Republic of Argentina,* 2006 U.S. Dist. Lexis 9668, at *5, this Court recognized the administrative aspects the Republic tries to characterize as "individualized issues" here. In granting summary judgment against the Republic on behalf of the class in that case, the Court noted that "[l]ater proceedings will determine exactly who are members of the class and the amounts the members are entitled to," exactly the issues the Republic claims destroy predominance here. Clearly, however, in *H.W. Urban,* the Court did not find either issue an impediment to class certification which had been granted years earlier. *H.W. Urban v. Republic of Argentina,* 2003 U.S. Dist. Lexis 23363. As in other class cases, individual class member's claims and the determination of damages will be subject to a claims process, likely administered by an independent claims administrator.

## IV. CONCLUSION

For the foregoing reasons and the reasons set forth more fully in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, Mr. Brecher respectfully requests that this Court certify the proposed class.

Dated this 20th day of January, 2009.

          Respectfully submitted,

          HAGENS BERMAN SOBOL SHAPIRO LLP

          By: <u>s/ Steve W. Berman</u>
            Steve W. Berman (SB 0834)
            Jeniphr Breckenridge
          1301 Fifth Avenue, Suite 2900
          Seattle, WA 98101
          Telephone: (206) 623-7292

          Robert A. Skirnick (RS 2636)
          MEREDITH COHEN GREENFOGEL &
           SKIRNICK, P.C.
          One Liberty Plaza, 35th Floor
          New York, NY 10006
          Telephone: (212) 240-0020

          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

On January 20, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

**Carmine D. Boccuzzi, Jr.**
maofiling@cgsh.com; cboccuzzi@cgsh.com

**Robert Andrew Skirnick**
mcgsny@aol.com

HAGENS BERMAN SOBOL SHAPIRO LLP


By: _s/ Steve W. Berman_
    Steve W. Berman (SB 0834)