UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
HENRY H. BRECHER, Individually And On         :   No. 06 CV 15297 (TPG)
Behalf Of All Others Similarly Situated,      :
                                              :
                        Plaintiff,            :
                                              :
       v.                                     :
                                              :
REPUBLIC OF ARGENTINA,                        :
                                              :
                        Defendant.            :
---------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION TO MODIFY CLASS DEFINITION

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  RELEVANT FACTUAL BACKGROUND................................................................3

    A.  The Bond...........................................................................................................3

        1.  The Trust Deed governs the Bond and does not distinguish between holders.........................................................................3

        2.  Argentina's provides data concerning its outstanding obligation on the Bond. .............................................................................4

    B.  Procedural History ............................................................................................5

        1.  The Court certifies the Class...............................................................5

        2.  The Court grants summary judgment as to liability and directs the parties to focus on discovery related to class damages. .............6

    C.  Additional Developments Since Class Certification.........................................8

        1.  Argentina does not have records sufficient to distinguish the non-continuous holders; under the current class definition additional discovery would be required. ........................................8

        2.  Legal authority developed since class certification, related to the Argentina default and debt obligations, establishes that the interests of all holders are aligned......................................9

    D.  Comparison of Current Class Definition and Proposed Class Definition................9

III. ARGUMENT................................................................................................................10

    A.  Rule 23 Grants Courts the Authority to Modify Class Definitions Before Final Judgment................................................................................10

    B.  Post-Certification Developments Warrant Class Re-Definition Here ...........12

    C.  The Modified Class Definition Does Not Change the Analysis Under Rule 23....................................................................................13

        1.  The modified class meets the numerosity, class-wide claims and issues, and common questions of law and fact requirement of Rule 23. ...................................................................13

        2.  Mr. Brecher's claims are typical of those of the expanded class and he is an adequate representative. ................................13

IV. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Brecher v. Republic of Argentina*,
  2009 U.S. Dist. LEXIS 27846 (S.D.N.Y. Mar. 27, 2009) ...................................................... 5

*Comcast Corp. v. Behrend*,
  __ U.S. __, 133 S. Ct. 1426 (2013) ................................................................................... 10

*Garcia v. Tyson Foods, Inc.*,
  890 F. Supp. 2d 1273 (D. Kan. 2012) ............................................................................... 11

*Gutierrez v. Johnson & Johnson*,
  269 F.R.D. 430 (D.N.J. 2010) ........................................................................................... 11

*H.W. Urban GmbH v. Republic of Argentina*,
  2003 U.S. Dist. LEXIS 23363 (S.D.N.Y. Dec. 30, 2003) ............................................. 6, 14

*Hickory Secs. Ltd. v. Republic of Argentina*,
  2012 U.S. App. LEXIS 16928 (2d Cir. Aug. 14, 2012) ("*Seijas III*") ............................. 7, 8

*In re Initial Pub. Offering Secs. Litig.*,
  483 F.3d 70 (2d Cir. 2007) ................................................................................................ 11

*In re J.P. Morgan Chase Cash Balance Litig.*,
  255 F.R.D. 130 (S.D.N.Y. 2009) ................................................................................. 11, 12

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  241 F.R.D. 435 (S.D.N.Y. 2007) ....................................................................................... 11

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .............................................................................................. 10

*Minter v. Wells Fargo Bank, N.A.*,
  280 F.R.D. 244 (D. Md. 2012) ..................................................................................... 12, 13

*NML Capital, Ltd. v. Republic of Argentina*,
  2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) ("*NML II*") .......................................... 2, 4, 9

*NML Capital, Ltd. v. Republic of Argentina*,
  2013 WL 4487563 (2d Cir. Aug. 23, 2013) ("*NML III*") ........................................... passim

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) ("*NML I*") .......................................................................... 2, 9

*Salim Shariar v. Smith & Walensky Rest. Group, Inc.*,
  659 F.3d 234 (2d Cir. 2001) .............................................................................................. 14

*Seijas v. Republic of Argentina*
   606 F.3d 53 (2d Cir. 2010) ............................................................................................. 11

**OTHER AUTHORITIES**

7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE &
   PROCEDURE § 1785.4 (3d ed. 2005) ................................................................................ 11

Fed. R. Civ. P. 23 Notes of Advisory Comm., Subdivision (c)(1) (1966) ..................................... 11

Fed. R. Civ. P. 23 Notes of Advisory Comm. (2003) .................................................................. 11

Plaintiff Henry Brecher and the certified class ("Brecher Class" or "Class") submit this memorandum of law in support of their motion to modify class definition, pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).[1]

## I. PRELIMINARY STATEMENT

The Brecher Class respectfully asks the Court to modify the existing class definition to eliminate the restriction of the Class to "continuous holders," and instead simplify the Class to include all holders of the Bond.[2] The Class is currently defined as current holders who *continuously hold* beneficial interests in the Bond from the date the lawsuit was filed until the date the of final judgment.[3] In effect, the definition excludes any bondholders who purchased interests on secondary markets after the lawsuit was filed. The Court adopted the definition at Argentina's request after the case was certified. *See infra* at § II.B.1.

There is no rationale, at this point in the case, to distinguish between holders. Since certification, it has become clear that Argentina's class definition serves the Republic's political vendetta against purchasers of the Republic's distressed debt on secondary bond markets, publicly referred to by Argentina as "vultures,"[4] rather than any legal or practical necessity. Moreover, restriction of the Class to continuous holders has raised unnecessary obstacles to the entry of a judgment in this case. Recent discovery has shown that evaluation of the non-continuous bondholders' interests will require expensive, burdensome, and time-consuming third

---

[1] The Court granted leave to file motions to modify class definition in nine related class actions. ECF No. 77 (Aug. 22, 2013). For purposes of this motion, the cases other than *Brecher* will be referred to collectively as the "*Seijas* Class."

[2] Argentina Bond ISIN XS0113833510, denominated in Euros with a coupon rate of 9.25% and a maturity date of July 20, 2004.

[3] ECF No. 56 (order approving form and manner of class notice and revising class notice to include participants in 2010 Bond Exchange). The Class is subject to certain exclusions, which Plaintiffs do not seek to change, including purchasers who participated in the 2005 or 2010 Bond Exchanges and purchasers who have initiated separate proceedings, and the Republic.

[4] *See NML Capital, Ltd. v. Republic of Argentina,* 2013 WL 4487563, at *1 n.4 (2d Cir. Aug. 23, 2013) ("NML III") (summarizing the Republic's vitriol toward so-called "vultures," and its defiance of United States courts in connection with bond litigation).

party discovery in the United States and abroad, causing additional delay. *See infra* at § II.C.1. This step is unnecessary because the rights of all current holders are identical, regardless of when they purchased or how much they paid. Decisions handed down by this Court and the Second Circuit since certification have not distinguished between holders and continuous holders.[5]

Whatever reasons may have previously existed to impose the restrictive condition no longer apply. The Second Circuit has described Argentina as a "uniquely recalcitrant debtor."[6] Argentina should not be allowed to avoid its financial obligations to the Brecher Class and other bondholders by hiding behind a class definition that it created. This Court recently found that nearly twelve years after its default on its sovereign debt, Argentina is now able to make payments on the bonds, as well as the Exchange Bonds which were offered in 2005 and 2010, to compromise the defaulted debt.[7] The Second Circuit affirmed the finding.[8]

For all of these reasons, the Brecher Class asks the Court to exercise its authority under Rule 23(c)(1)(C) to modify the class definition to include all holders of beneficial interests in the Bond.[9]

---

[5] *NML Capital, Ltd. v. Republic of Argentina,* 2012 WL 5895786, at *1 (S.D.N.Y. Nov. 21, 2012) ("*NML II*"). Plaintiffs will refer to three NML Capital, Ltd. decisions in this memorandum. They will be referred to as follows: *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246 (2d Cir. 2012) ("*NML I*"); *NML Capital, Ltd. v. Republic of Argentina*, 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012) ("*NML II*"); and *NML Capital, Ltd. v. Republic of Argentina*, 2013 WL 4487563 (2d Cir. Aug. 23, 2013) ("*NML III*").

[6] *NML III*, 2013 WL 4487563, at *36.

[7] *NML II,* 2012 WL 5895786, at *1.

[8] *NML I*, 699 F.3d at 263. *NML III*, 2013 WL 4487563, at *8.

[9] Plaintiffs provide a side-side-by-side comparison of the current class definition and the proposed modified definition, *infra.* at § II.D.

## II. RELEVANT FACTUAL BACKGROUND

### A. The Bond

#### 1. The Trust Deed governs the Bond and does not distinguish between holders.

The Bond is a contractual obligation of Argentina, governed by the Trust Deed (dated July 27, 1993)[10] and supplementary documents. The Trust Deed is similar to the Fiscal Agency Agreement of 1994 ("FAA"), which governs other Argentine bonds before the Court. The Second Circuit recently described the promises Argentina made to purchasers in the FAA: "Argentina promised that, in the event of default, unpaid interest and principal would become due in full … Argentina promised that each bond would be transferable and payable to the transferee, regardless of whether it was a university endowment, a so-called 'vulture fund,' or a widow or an orphan…. Argentina promised to treat [the bonds] at least equally with its other external indebtedness."[11] The operative contract terms in the two documents are virtually identical. The promises Argentina made to bond purchasers under the Trust Deed are the same.[12]

Like the FAA, the Trust Deed contains a *pari passu* clause, with an equal treatment provision, that provides that:

> [t]he Notes and Coupons of all Series constitute … direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves…. The payment obligations of the Republic under the Notes and the Coupons shall … at all times rank at least at least equally with all its other present and future unsecured and unbsubordinated External Indebtedness.[13]

---

[10] Ex. 1. Unless otherwise noted, exhibits are attached to the Declaration of Jeniphr Breckenridge In Support of Motion to Modify Class Definition ("Breckenridge Decl.").

[11] *NML III*, 2013 WL 4487563, at *1 (interpreting FAA bonds and the contractual rights of certain secondary market purchasers to payment on those bonds).

[12] Ex. 1.

[13] *Id.* at 30. "External Indebtedness" is limited to obligations payable in non-Argentine currency. *Id.* at 31.

The Trust Deed's *pari passu* clause is nearly identical to the *pari passu* clause in the FAA.[14] Since class certification, the Second Circuit and this Court have found that Argentina has breached the *pari passu* clause by issuing new debt pursuant to the 2005 and 2010 Exchange Offers, and making payment on that debt, but refusing to make payments to those holding the original bonds in violation of the equal protection provision.[15] In doing so, the Courts were interpreting the rights of certain bondholders, who had purchased their interests on secondary markets, to recover from Argentina. The courts did not consider where, when, or for how much the interests in the bonds had been purchased to be a factor as to whether the bondholders could recover the full amount owed under the bond documents (rather than the discounted price they paid for the interests).[16] The courts did not distinguish between purchasers on secondary and primary markets, because the bond documents do not.[17] Like the FAA, the Trust Deed provides that interests in the Bond are transferrable,[18] or, as Argentina describes them, "fully negotiable."[19]

    **2.    Argentina's provides data concerning its outstanding obligation on the Bond.**

According to data Argentina provided, Plaintiffs calculated that the outstanding Bond principal was approximately 28,770,000 Euros as of October, 2011.[20] This figure takes into account the 2005 and 2010 Exchange Offers and the amount of series in litigation or arbitration proceedings.[21] Argentina's data does not distinguish between holders based on how long they have held their interests.[22]

---

[14] A table comparing the language in the Trust Deed *pari passu* clause and the FAA 1994 *pari passu* Clause is provided at Ex. 2.

[15] *NML II,* 2012 WL 5895786, at *1; *NML III,* 2013 WL 4487563, at *8.

[16] *Id.*

[17] *Id.*

[18] Ex. 1.

[19] Ex. 3.

[20] Ex. 4.

[21] *Id.*

[22] *Id.*

**B. Procedural History**

    **1. The Court certifies the Class.**

Mr. Brecher moved for class certification in July, 2008. The Court had previously certified eleven or more classes against Argentina on other bonds related to the Default.[23] Argentina challenged certification on several bases.[24] *See infra* at § III.C. The Court rejected Argentina's arguments and certified the Class in March, 2009.[25]

Plaintiffs submitted a proposed order. Argentina objected to the proposed class definition in the order. Argentina submitted its objections to the Court and proposed an alternate definition that restricted the class to persons who *continuously* held beneficial interests in the Bond from the date of the filing of the class action complaint (December 19, 2006) until the date of final judgment.[26] Argentina offered two bases for the continuous holder definition: (1) a continuous holder definition had been used for the all of the Argentina bond classes the Court had previously certified;[27] and (2) Argentina claimed that it was "the only way in which a class of holders of freely negotiable obligations asserting breach of contract claims could possibly be defined."[28] The Court signed Argentina's proposed order.[29]

At the time, Plaintiffs believed that the continuous holder definition imposed by the Court would be workable, because either aggregate class damages could be estimated based on publicly available information or because Argentina would have, and produce in discovery, records sufficient to calculate class damages. As it turned out, this was not the case. *See infra.* at § II.C.1.

---

[23] ECF No. 12 at 1 (memorandum of law in support of class certification, citing cases).

[24] *Id.*

[25] *Brecher v. Republic of Argentina*, 2009 U.S. Dist. LEXIS 27846 (S.D.N.Y. Mar. 27, 2009).

[26] Ex. 3.

[27] *Id.* at 2 (citing Class Notice in *Urban v. Republic of Argentina*, No. 02 Civ. 5699, Class Notice in *Seijas v. Republic of Argentina*, No. 04 Civ. 400, Class Notice in *Scappini v. Republic of Argentina*, No. 04 Civ. 9788).

[28] *Id.* Argentina raised other issues in the letter that are not at issue here.

[29] ECF No. 25 (May 29, 2009).

In retrospect, Argentina's restriction of the Class to continuous holders was arbitrary and unsupported by any legal authority or practical considerations. The fact that other class actions had been certified using the same definition is not dispositive. The *Urban* class was certified in 2003, prior to the 2005 and 2010 Bond Exchanges. It appears, from the reported decision, that the *Urban* plaintiffs proposed a continuous holder class for undisclosed reasons.[30] Whatever the reasons were for this, the condition is not necessary here.[31]

In addition, Argentina's assertion that a continuous holder class was the "only way in which a class of holders of freely negotiable obligations could possibly be defined" is not explained, not supported by legal authority, and no longer makes sense. It is the "freely negotiable" nature of the interests in the Bond that renders differentiation among the Bond's purchasers unnecessary. Although Argentina did not state so, it could be that at the time Argentina proposed the continuous holder definition it was concerned about the ramifications of certification of a holder class on the impending 2010 Bond Exchange. This is no longer an issue. The 2010 Bond Exchange is long closed. The claims of all holders are thus aligned and there is now no legal or practical reason to exclude any holders from the Class.

### 2. The Court grants summary judgment as to liability and directs the parties to focus on discovery related to class damages.

The Class moved for summary judgment on liability and damages in December 2011. The Class based its damage calculations on Argentina's data.[32] An economist, retained by the Class, calculated the interest due on the Bond and statutory pre-judgment interest, based on the

---

[30] *H.W. Urban GmbH v. Republic of Argentina,* 2003 U.S. Dist. LEXIS 23363, at *3 (S.D.N.Y. Dec. 30, 2003).

[31] The fact that *Seijas* and related cases are among the cases that Argentina cited as having adopted the same class definition is particularly unavailing at this point in the case. The *Seijas* Class is currently addressing the same obstacles to class damages as the Brecher Class. The *Seijas* Class will file a motion to modify class definition simultaneous with this motion to address the issues. *See* Ex. 5; ECF No. 77.

[32] Ex. 4.

Argentina data. The economist computed damages, as of November 30, 2011, in the amount of € 68,011,104, inclusive of principal, bond interest, and pre-judgment interest.[33]

Argentina nominally contested liability, but attacked the Class's damages calculations. The opposition was based on the "continuous holder" class definition and the inaccessibility of data to calculate the holdings of the non-continuous holders so their interests could be excluded from the Class damages. Argentina argued that: (1) it would "be impossible to determine to whom the Republic is liable and for what;"[34] and (2) Plaintiffs' "methodology failed to exclude *any* amounts to reflect the fact that interests in Argentine debt continue to trade in the secondary market, and that therefore any such debt traded over the past five years by definition could not be deemed to satisfy the continuous holder requirement."[35] Argentina failed to support its arguments with and data about the secondary market, including whether a secondary market existed for this Bond, or submit any evidence to refute the Class's damages calculations.[36]

While the *Brecher* parties were briefing summary judgment, the issue of the methodology underlying Plaintiffs' damages calculations was before the Second Circuit in an appeal related to the *Seijas* Class.[37] The *Seijas* Class, with its "continuous holder" class, had used a similar methodology to calculate damages for that class. After the parties in *Brecher* submitted their briefing, but before the summary judgment hearing, the Second Circuit remanded *Seijas* to the district court, rejecting the methodology because of the continuous holder definition.[38]

---

[33] ECF No. 61.

[34] ECF No. 66 at 1-2.

[35] *Id.* at 4.

[36] *Id. in passim; see also* Ex. 5 at 10-11 ("If the Republic had information that there was such trading, they could have said that. Instead, they just made a naked assertion that we didn't account for that. We don't believe that is sufficient."); *id.* at 13 ("We put forward what we think is our burden and the damages that we're entitled to. And the Republic, if it thinks there was such trading, it was their burden in their opposition to point that out. They chose not to. They made a choice not to do that.").

[37] *Hickory Secs. Ltd. v. Republic of Argentina,* 2012 U.S. App. LEXIS 16928 (2d Cir. Aug. 14, 2012) ("*Seijas III*").

[38] *Id.*

This Court granted partial summary judgment on liability to the Brecher Class, but denied judgment as to damages based on *Seijas III*.[39] The Court advised the parties it would hold a joint evidentiary hearing in *Brecher*, *Seijas*, and other related cases to comply with the Second Circuit's guidance in *Seijas III*. The Court admonished the parties that the burden of calculating the holdings of non-continuous holders would be shared:

> … I think that the Republic's lawyers better get to work to investigate as much as you can the state of the trading in these bonds in the two cases. There are ways to do that. There are inquiries that can be made, and I will expect you to start doing that and prepare for that hearing, because you're not going to be allowed to sit silent at that hearing saying the other guy has all the burden. The Republic has ways of finding out. It's the Republic's bonds that are being dealt with. There are investment houses that can be inquired of. There are a lot of ways to inquire, and I'll expect you to be begin right now – maybe you already have – inquiring, and I will be expecting some information from the Republic. And if you come in and say it's all the burden on the other side, you're going to have some more work to do.[40]

### C. Additional Developments Since Class Certification

**1. Argentina does not have records sufficient to distinguish the non-continuous holders; under the current class definition additional discovery would be required.**

After the summary judgment hearing, the parties conferred and focused on discovery related to class damages calculations. Argentina claimed that it did not have any information regarding the secondary market for the Bond at all, including whether such a market existed, despite representations at the *Brecher* summary judgment hearing that there was trading in the Bond.[41] The Brecher and Seijas Classes separately served discovery on Argentina. Argentina responded with objections and a sparse production of documents unrelated to any secondary market.[42]

---

[39] ECF No. 70.

[40] Ex. 5 at 14.

[41] *Id.* at 14.

[42] Ex. 6.

As a result, in order to get the evidence regarding non-continuous holder holdings, Plaintiffs would be forced to engage in expensive, burdensome, time-consuming, and difficult third party discovery in the United States and abroad.

### 2. Legal authority developed since class certification, related to the Argentina default and debt obligations, establishes that the interests of all holders are aligned.

Bondholders affected by the Default continue to battle for their rights to be paid in United States courts. Decisions by this Court and the Second Circuit since class certification have clarified the relationship between bondholders and the Republic and the Republic's contractual obligations. Under terms of the Trust Deed, any purchasers on the secondary market are entitled to payment under the same terms as primary purchasers. As discussed above, since class certification, this Court and the Second Circuit have handed down decisions that recognize the rights of all bondholders to pursue their contractual rights under the bond documents, without regard to where and when the interests were purchased.[43]

### D. Comparison of Current Class Definition and Proposed Class Definition

The current and proposed class definitions appear below. Plaintiffs seek just one change: an expansion of the class definition to include all holders of the Bond, without regard to where or when they purchased their interests.

---

[43] *See, e.g., NML I,* 699 F.3d 246; *NML II*, 2012 WL 5895786; *NML III,* 2013 WL 4487563.

| [Proposed] Modified Class Definition | Current Class Definition |
|---|---|
| All holders of beneficial interests in the Bond,<br><br>**Except:**<br><br>(i) Those purchasers who participated in either the 2005 or 2010 Exchange Offers;<br><br>(ii) Those purchasers who have initiated separate proceedings, through individual claims asserted in this Court or through any other dispute resolution mechanism, including arbitration;<br><br>(iii) The Republic of Argentina; and<br><br>(iv) Those purchasers who exclude themselves from the Class by filing a written request for exclusion.<br><br>The Class includes all such holders of these interests in the Bond worldwide, including holders in Argentina. | All current holders of beneficial interests in the Bond who purchased or otherwise acquired the interests prior to December 19, 2006, and who will continue to hold those interests until the date of final judgment.<br><br>**Except:**<br><br>(i) Those purchasers who participated in either the 2005 or 2010 Exchange Offers;<br><br>(ii) Those purchasers who, for any other reason, fail to hold those interests through the date of judgment or settlement of this class action;<br><br>(iii) Those purchasers who have initiated separate proceedings, through individual claims asserted in this Court or through any other dispute resolution mechanism, including arbitration;<br><br>(iv) The Republic of Argentina; and<br><br>(v) Those purchasers who exclude themselves from the Class by filing a written request for exclusion.<br><br>The Class includes all such holders of these interests in the Bond worldwide, including holders in Argentina. |

### III. ARGUMENT

### A. Rule 23 Grants Courts the Authority to Modify Class Definitions Before Final Judgment

Federal Rule of Civil Procedure 23(c)(1)(c) provides that "an order that grants or denies class certification may be altered or amended before final judgment." *See Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1437 (2013) ("a certification order may be altered or amended as the case unfolds"). Rule 23(d) also allows the district court to make such orders as are necessary to assure the orderly administration of justice. *See Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 379 (2d Cir. 1997). This Court has recognized the flexibility inherent in

the rule, and in certification, in connection with Argentine bond litigation in *Seijas v. Republic of Argentina* ("*Seijas I*"), 606 F.3d 53, 58 (2d Cir. 2010) ("certification of the classes may be either altered or terminated at future stages of the litigation").

The Advisory Committee Notes to Rule 23 further explain that "[a] determination once made can be altered or amended … if, upon fuller development of the facts, the original determination appears unsound." Fed. R. Civ. P. 23 Notes of Advisory Comm., Subdivision (c)(1) (1966). *See also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007) ("It is well-established that a court has the inherent power and discretion 'to redefine and modify a class in a way which allows maintenance of an action as a class action.'") (citing cases). The discretion continues throughout the litigation, even after summary judgment or trial. 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1785.4 (3d ed. 2005). *See also Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d 1273 (D. Kan. 2012). The Advisory Committee Notes (2003) specifically contemplate amendment under the circumstances before the Court in this case. "Following a determination of liability … proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class." Rule 23(c)(1)(C) is often employed to cure defects in a class case. *Gutierrez v. Johnson & Johnson*, 269 F.R.D. 430, 434 (D.N.J. 2010) ("A court may revisit a prior denial after developments in the factual background, a modified proposed class definition, new class representatives, or any other changes which may cure defects earlier found by the court."); *see also In re Initial Pub. Offering Secs. Litig.*, 483 F.3d 70 (2d Cir. 2007). Courts frequently expand or narrow a class where to do so would promote the interests of fairness and efficiency. *In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) ("'[C]ourts are required to reassess their rulings as the case develops,' and 'must define, redefine, subclass, and decertify as appropriate in the progression of the case from assertion to facts.'"). In exercising such discretion, courts look for "some development or change in circumstances to merit revisiting a class certification decision." *Id.* This standard is influenced by the law of the case doctrine, under which compelling reasons include "an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.*

In *Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244 (D. Md. 2012), the court considered whether to enlarge a previously-certified class. Defendants objected that amending the certification would increase the unmanageability of the litigation and thus defeat the superiority prerequisite for Rule 23(b)(3) certification. The court allowed the expansion, finding that the expansion of the class did not "sufficiently change the landscape" of the case, to destroy superiority. *Id*. at 247. The expansion did not "open the door to new theories or sets of proof that were not already part of the case…." *Id.*

**B. Post-Certification Developments Warrant Class Re-Definition Here**

Here, new evidence, developments in the law surrounding the Argentina bond default, and the need to promote justice for all holders of the Bond support modification of the class definition. In the four years since class certification, there has been an uncommon level of related activity on the international economic stage and in United States Courts. Plaintiffs' discovery efforts have shown that the current class definition would make it extremely difficult to calculate class damages. Whatever unstated considerations drove Argentina to seek a continuous bondholder definition in 2009 when it anticipated the 2010 Bond Exchange, or in earlier bond class cases, no longer apply. Any legal or practical basis to exclude non-continuous bondholders from the Class that may have applied earlier is not applicable at this point in Argentina default history. Recent decisions by this Court and the Second Circuit interpreting the contractual rights of purchasers on the secondary market have paved the way for those purchasers to recover under the same bond documents and the same theories, using the same proof as the existing class. Argentina should not be allowed to hold the Brecher Class hostage with the class definition it drafted. Injustice will result. There is no legal reason that non-continuous holders should not be part of the Class.

Further, the modification of the class definition here will not result in prejudice to Argentina. If the expansion introduces new class members into the litigation, their numbers will

likely be few.  The inclusion of their claims will not significantly "change the landscape" of the litigation.  The claims of the modified class will be based on the same theories and sets of proof that are already part of the case.  *Minter*, 280 F.R.D. at 247.  The newly-included class members' claims are based on the same contractual obligations on the part of Argentina, the same governing documents, and the same default – and thus the same sets of proof the claims of the current Class will rely on.

C.     **The Modified Class Definition Does Not Change the Analysis Under Rule 23**

The Court previously analyzed class certification of the case.  Adoption of the modified class definition will not disturb the Court's analysis.  None of the other substantive requirements of Fed. R. Civ. P. 23(a) or Fed. R. Civ. P. 23(b)(3) are affected by the change in class definition.  The modified class meets the requirements of Rule 23.

   1.     **The modified class meets the numerosity, class-wide claims and issues, and common questions of law and fact requirement of Rule 23.**

The question of whether the amended class meets the numerosity requirement of Rule 23(a)(1) is not affected by the modified class definition.  The "continuous holder" class is a subset of the broader holder class, for which numerosity has already been established.  The question of whether there are class wide claims and issues common to the modified class under Rule 23(a)(2) is also not affected by expanding the class definition to include all bondholders.  The interests of the holders are aligned.  The requirement under Rule 23(b)(3) that common questions of law and fact predominate over individual issues is similarly unaffected by the proposed change in the class definition.  The same questions of law and fact are common to members of the Class under both the current definition and the modified definition because of the alignment of modified class members' interests.

   2.     **Mr. Brecher's claims are typical of those of the expanded class and he is an adequate representative.**

The only theoretical differences resulting from the change to the class definition concern typicality and adequacy.  The Court found that Mr. Brecher's claims were typical of the Brecher Class.  Mr. Brecher's claims are also typical of those of the modified class.  As the Second

Circuit has explained, typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *Salim Shariar v. Smith & Walensky Rest. Group, Inc.,* 659 F.3d 234, 252 (2d Cir. 2001). As this Court has found in related Argentina bond default litigation, "[p]laintiff being a bondholder, has claims typical of those of the class by virtue of being subject to the same contractual terms." *H.W. Urban GmbH v Republic of Argentina*, 2003 U.S. Dist. LEXIS 23363, at *5. Mr. Brecher and the modified class suffer from the same default in the same bond and hold the same rights. Therefore, they have a shared incentive to prove all the same elements in this action. Mr. Brecher's claims are typical.

Further, the interests of Mr. Brecher and the expanded class are not antagonistic. Members of the expanded class share a common interest in proving that Argentina breached its contract and in obtaining the highest possible recovery. The expanded class's theories are also unified. There is no reason to doubt that Mr. Brecher is capable of representing the Class. Each holder's interest is governed by the same documents – the interests will be weighted the same and calculated the same by an objective formula. When the day of financial reckoning comes – each interest will be weighted the same and calculated the same by an objective formula.

## IV. CONCLUSION

For the reasons set forth above, Mr. Brecher and the Class respectfully request that the Court exercise its authority under Rule 23(c)(1)(C) and modify the class definition to include all holders of beneficial interest in the Bond at the time of entry of the final judgment. A proposed form of order is submitted with this motion.

Dated this 12th day of September, 2013.

        Respectfully submitted,

        HAGENS BERMAN SOBOL SHAPIRO LLP

        By: */s/ Steve W. Berman*
            Steve W. Berman (SB 0834)
        Jeniphr A.E. Breckenridge
        1918 Eighth Avenue
        Seattle, WA 98101
        Telephone: (206) 623-7292
        Facsimile: (206) 623-0594

        Jason A. Zweig
        HAGENS BERMAN SOBOL SHAPIRO LLP
        555 Fifth Avenue – Suite 1700
        New York, NY 10017-2416
        Telephone: (212) 752-5455
        Facsimile: (917) 210-3980

        *Attorneys for the Class*

## CERTIFICATE OF SERVICE

On September 12, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

**Carmine D. Boccuzzi, Jr.**
maofiling@cgsh.com; cboccuzzi@cgsh.com

**Robert Andrew Skirnick**
mcgsny@aol.com

        HAGENS BERMAN SOBOL SHAPIRO LLP


        By    /s/ Steve W. Berman
            Steve W. Berman
        HAGENS BERMAN SOBOL SHAPIRO LLP
        1918 Eighth Avenue, Suite 3300
        Seattle, WA 98101
        Telephone: (206) 623-7292
        Facsimile: (206) 623-7292
        Email: steve@hbsslaw.com

- 16 -

001783-13 636661 V1